[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11868
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-00755-RAL-EAJ

YELLOW PAGES PHOTOS, INC.,

Plaintiff-Appellant,

versus

ZIPLOCAL, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 24, 2017)

Before TJOFLAT, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Yellow Pages Photos, Inc. ("YPPI") appeals the District Court's award of $69,354.76 in attorney's fees and $20,211.37 in nontaxable costs against Ziplocal LP ("Ziplocal"). These amounts represent approximately 4.9% of the fees and 6.8% of the nontaxable costs YPPI requested and YPPI asserts that such a dramatic reduction constituted an abuse of discretion. Further, YPPI argues that the District Court's use of a mathematical formula to award fees and costs in proportion to YPPI's degree of success in litigating its claims was impermissible. YPPI also contends that it is presumptively entitled to recovery of full costs under our precedent. The District Court's failure to award full costs without a "sound basis" for doing so was error. We agree and find that reducing YPPI's request for fees and costs in strict, mathematical proportion to the results obtained at trial was an abuse of discretion.

The current litigation over fees and costs is the most recent entry in a lengthy civil dispute involving a series of stock photographic images YPPI grouped for sale under subject matter headings specifically designed for use by the phonebook industry. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1260 (11th Cir. 2015). In March of 2004, YPPI signed a contract with Ziplocal consisting of two documents: a Site License Purchase Agreement ("SLPA") and an End User License Agreement ("EULA"). *Id.* at 1260–61. Under these agreements, Ziplocal agreed to purchase a license to use all of YPPI's current

2

photographic content, as well as 120 additional subject matter headings as they were developed. *Id.* at 1261. The contract between Ziplocal and YPPI also required Ziplocal to prevent unauthorized users from accessing YPPI's photos and forbade Ziplocal from transferring any "images to any outside parties or individuals unless authorized by YPPI." *Id.* Significantly, the agreement between YPPG and Ziplocal contained a provision allowing the prevailing party to collect fees and costs "[i]n the event of legal action to enforce [the contract] or in conjunction with the use of [YPPI's licensed photos]."

Six years after reaching this initial agreement, Ziplocal entered into an agreement with a larger firm, Yellow Pages Group, LLC ("YPG"), who began selling its phone books to Ziplocal for local distribution. *Yellow Pages Photos, Inc.*, 795 F.3d at 1262. YPG employees modified and otherwise updated Ziplocal's local phonebooks to prepare them for distribution. *Id.* As part of this process, Ziplocal provided YPG with YPPI's licensed photos. Some of these photos also appeared in subsequent YPG publications. *Id.* Ziplocal never requested or received YPPI's permission to transfer its licensed photos to YPG. *Id.* Upon discovering this unlicensed use of its images, YPPI brought suit alleging that

3

Ziplocal breached its licensing contract with YPPI and, as a result, also infringed YPPI's copyrights.[1]  *Id.*

Following a lengthy and contentious trial, the jury concluded that Ziplocal breached its contract, but no damages flowed from the breach.  *Id.* at 1263.  The jury also found that YPPI's copyright was infringed and awarded $123,000 in statutory damages against YPG and $1.00 of actual damages against Ziplocal.  *Id*.  Finally, the jury determined that Ziplocal was a contributory infringer of YPPI's copyright and awarded an additional $100,000 in actual damages.  *Id.*  All these findings were subsequently upheld on appeal.  *Id.* at 1286.

After trial, YPPI filed several motions seeking fees and costs against both YPG and Ziplocal pursuant to both Section 505 of the Copyright Act and the licensing agreement between the parties.  YPPI argued that it was entitled to $1,422,661.75 in attorney's fees and $269,484.96 in nontaxable costs.[2]  The District Court declined to make a final award of costs and fees until the completion of the initial appeals process.  Nonetheless, it did hold that YPPI was the prevailing party and accordingly was entitled to recover fees and costs under its license

---

[1] YPPI also asserted a copyright infringement claim against YPG. *Yellow Pages Photos, Inc.*, 795 F.3d at 1262.

[2] YPPI also argued that it was entitled to $98,435.73 in taxable costs, which is not at issue on this appeal. YPPI's claim for attorney's fees and costs accounts includes substantial self-imposed reductions.  In particular, Plaintiff subtracted time spent litigating personal jurisdiction, time spent briefing and litigating the definition of a 'work' for copyright purposes, and time spent preparing a motion for sanctions during discovery.

4

agreement with Ziplocal.  The District Court declined to award attorney's fees under Section 505 of the Copyright Act.  YPPI properly renewed its motions for fees and costs after the initial appeal process concluded, and this court affirmed the jury verdict.

This appeal concerns the District Court's March 24, 2016 order granting YPPI's Motions for Fees and Costs, but dramatically reducing the amounts requested.  The District Court found that some reduction in YPPI's request for attorney's fees was appropriate based on the block billing practices engaged in by YPPI, the contentiousness of the litigation, and the District Court's apparent belief that hours spent pursuing YPPI's copyright claims were not recoverable pursuant to the licensing agreement providing the basis for the fee award.  Accordingly, the order provided for a 35% across the board reduction in attorney's fees and set the lodestar amount at $924,730.14.

After determining this presumptively reasonable lodestar amount, the District Court reduced the award by an additional 92.5% to reflect YPPI's relative degree of success in the litigation.  The court explained that YPPI's $100,001 recovery against Ziplocal, was "approximately 10% of the lowest amount Plaintiff sought . . . and approximately 5% of the top range [of damages sought]." Accordingly, the court split the difference between those two figures, and awarded exactly that percentage of the lodestar amount in fees.  The court performed an

5

identical calculation with respect to nontaxable costs.  The court apparently accepted the amount of costs provided by YPPI, $269,486.36, but applied a 92.5% reduction, ultimately awarding only $20,211.37 in nontaxable costs.  The District Court relied on the same analysis discussed above to justify this reduction.

We review fees and costs awards under an abuse of discretion standard.  *See, e.g.*, *Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1491 (11th Cir. 1994).  An abuse of discretion occurs when a district court commits a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact.  *See, e.g.*, *Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1039 (11th Cir. 2010).  This standard necessarily implies a range of choices, and we will affirm even if "we would have decided the other way if it had been our choice."  *Id.* (citations omitted).  Even though determining a reasonable fee is within the sound discretion of the trial judge, this discretion is not unlimited.  *Id.* at 1039–40.  The district court must provide a clear explanation of the rationale supporting a fee award.  *Id.*

As the award of attorney's fees and costs is essentially factual in nature, the district court's superior understanding of the litigation clearly places it in the best position to calculate such an award when appropriate.  *See Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1492–93 (11th Cir. 1994).  Unquestionably, the district court possesses wide discretion in calculating the amount and

reasonableness of such an award.  *Id.*  Here, the District Court carefully complied

with the Supreme Court's command in the landmark decision of *Hensley v.*

*Eckerhart*, and provided "a concise but clear explanation of its reasons for the fee

award."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Nonetheless, the District

Court erred in refusing to count hours expended in pursuit of YPPI's copyright

claims against Ziplocal in its initial lodestar calculation.

Florida law explicitly provides that "claims arise out of a contract if they are

inextricably intertwined with the contract."  *Dolphin LLC v. WCI Communities,*

*Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citation omitted).  Undoubtedly,

YPPI's copyright infringement claims arose directly out of its contract with

Ziplocal.  If the contract allowed Ziplocal to share YPPI's photos with unapproved

third parties, then no infringement would have occurred since the use of the

copyrighted images by YPG would have been properly licensed.  *See Yellow Pages*

*Photos, Inc.*, 795 F.3d at 1266.   So, to prevail on its copyright infringement

claims, YPPI needed to prove that the license agreement it signed with Ziplock

was breached.  And, YPPI did, in fact, prevail on its copyright claims against

Ziplock and was awarded nominal damages, as well as an additional $100,000 in

actual damages, based on a theory of contributory infringement.  It is unclear why

the District Court felt that reasonable attorney's fees would not flow to YPPI based

on this successful copyright action.[3]  In any event, the contractual attorney's fees provision which the District Court used to justify its fee award expressly contemplated the award of fees based on litigation "in conjunction with the use of the product."  This language is clearly broad enough to cover YPPI's copyright action. Accordingly, YPPI is entitled to reasonable attorney's fees for hours expended on those claims.

The District Court also erred in substantial reducing the lodestar amount after completing its initial calculation.  Although the district court retains discretion to reduce the lodestar, that amount embodies a presumptively reasonable fee. *Perdue v. Kenny ex rel. Winn*, 559 U.S. 542, 554 (2010).  The Supreme Court held that the lodestar should only be altered "in those rare circumstances in which [it] does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.; see also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993) (noting that "courts have severely limited the instances in which a lawfully found lodestar amount may be

---

[3] The question of whether claims are inextricably intertwined usually arises when a court seeks to apportion fees among unsuccessful and successful claims. *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987).  If the court finds that the unsuccessful claims were based on different facts and legal theories from the successful claims "the court cannot award any fee for services on the unsuccessful claims." *Id.* (citation omitted).  If the successful and unsuccessful claims are intertwined and share a "common core" of facts or a related legal theory then a reasonable fee is allowed as to all hours expended on both sets of claims. *Id.* at 1578–79 (citation omitted).  Here, the district court found YPPI was successful on all of its claims against Ziplocal.  Thus, while the lodestar amount can be properly reduced based on the relative degree of success enjoyed by the plaintiff, the lodestar itself should include the hours reasonably expended on all YPPI's claims.

8

adjusted to a higher or lower level"). However, it is appropriate to alter the lodestar to reflect attorney success or the lack thereof. *See, e.g.*, *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1998). A comparison of damages sought to the damages received is an appropriate measurement of the relative success of litigation. *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1580–81 (11th Cir. 1987).

But, the Supreme Court has frowned on a strictly mathematical approach calculating attorney's fees based on a ratio of total claims to successfully litigated claims, explaining that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hensley*, 461 U.S. at 435 n.11. In the civil rights context, the Supreme Court explicitly rejected a proportionality requirement between the amount of damages awarded and the amount of damages initially sought by the plaintiff. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). This Circuit followed the Supreme Court's lead and explained that while the amount of damages is relevant to assessing the degree of success enjoyed by the plaintiff, the "court may not employ a cash register approach in which setting a fee is merely an arithmetical function." *Cullens*, 29 F.3d at 1493. In this context, "[t]he risk is too great that a multiple-of-damages approach will subsume, or override, or erode other relevant considerations, or place undue tensions upon them" even if "the use of the  multiplier [is] explained and justified." *Id.* at 1494.

9

The District Court here, like the court in *Cullens*, did not "pull a [mathematical formula] out of the air. . . [it] spelled out its intellectual process." *Id.* at 1494. The court noted the damages actually awarded by the jury were only 5% of the maximum amount sought by YPPI and approximately 10% of the minimum damages sought.[4] The court then found the mid-range of these percentages, 7.5%, and concluded that this reflected the amount of success YPPI enjoyed and accordingly represented the percentage of the lodestar amount YPPI was entitled to receive. It is difficult to frame this process as anything other than a rote application of a mathematical formula to ensure proportionality between the litigation success of the plaintiff and a subsequent award of attorney's fees. Furthermore, the District Court does not provide additional justifications for its dramatic reduction in the lodestar. While the trial judge certainly enjoys the discretion to reduce its award of fees to reflect the limited litigation success of YPPI, our precedent forecloses the cash register approach relied on here. *See Cullens*, 29 F.3d at 1494.

---

[4]The court also criticized the amount of time spent litigating the definition of "work," even though YPPI had already deducted those hours from the initial fee request submitted to that court. That factor was presumably already included in the initial lodestar calculation, based on both this self-imposed deduction and the court's own refusal to credit all hours spent on the infringement claim in the calculation of the lodestar. Accordingly, the difficulty identifying the time spent litigating the definition of 'work' could not serve as a justification for a further reduction in attorney's fees. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008) (explaining that reconsidering factors used to make the initial lodestar calculation to justify subsequent adjustments to that amount constituted impermissible double-counting).

Additionally, the contract between YPPI and Ziplocal explicitly entitles the winning party to recover "its attorney's fees and costs." The contractual language here does not even limit the recovery of fees to a reasonable amount. Instead, the language of the contract plainly suggests a full recovery of the fees expended in litigation related to the contract. Such a provision was almost certainly intended to allow the parties to enforce even minor breaches of the contract without regard to relative costs. And, significantly, the trial judge relied entirely on the contract to justify an award of fees in the first instance. By allowing contractual attorney's fees, but also reducing them by over 90%, the District Court denied YPPI the benefit of its bargain and effectively rendered the contractual fees provision meaningless.

At the end of the day, the substantive reasonableness of the amount awarded is the touchstone of our evaluation of a district court's award of fees and costs. Here, the reduction of the presumptively reasonable lodestar amount, which already incorporated substantial self-imposed cost reductions, by an additional 92.5% was unreasonable, even in light of YPPI's limited litigation success. Such a significant reduction in fees functioned as a penalty and undermined the contractual provision that enabled the award of attorney's fees in the first instance. Further, the amount of the reduction was explicitly based on the application of a proportional modifier representing the degree of success YPPI enjoyed at trial.

11

Both the Supreme Court and our circuit precedent prohibit this sort of "cash register approach" to the award of attorney's fees.  Accordingly, the court abused its discretion in awarding only $69,354.76 after calculating a presumptively reasonable lodestar amount of attorney's fees as $924,730.14.

Similarly, the District Court abused its discretion by applying the same cash-register approach to the award of nontaxable costs under the fees and cost provision of the licensing agreement between YPPI and Ziplocal.  Based on this contractual entitlement, which is not limited to taxable costs under 28 U.S.C. § 1920, the District Court should have considered amounts it denied as taxable costs, the $6,118.76 incurred with D4-LLC and the $20,527 incurred with e-Hounds, Inc, as nontaxable costs.  *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1260–61 (11th Cir. 2015).  Under Rule 54(d) "there is a strong presumption that the prevailing party will be awarded costs."  *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) (citation omitted).  Of course, the trial judge possesses discretion with respect to awarding costs but that discretion is not unlimited and a denial of costs is "'in the nature of a penalty for some defection [on the part of the prevailing party] in the course of the litigation.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1038–39 (11th Cir. 2000) (citation omitted).  To overcome the presumption and deny full costs under Rule 54(d), the trial judge must "have and state a sound reason for doing so."  *Id.* at 1039.

12

It is true that Rule 54(d), and the presumption of costs allowed under the rule, ordinarily apply only to the costs that Congress defined as taxable under 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons*, *Inc.*, 482 U.S. 437, 441 (1987) (explaining that "§ 1920 defines the term 'costs' as used in Rule 54(d)"). These enumerated categories of taxable costs provided by § 1920 limits the discretion of federal courts to award costs under Rule 54(d). *See Arcadian Fertilizer, L.P. v. MPW Indus. Services Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). But, both the Supreme Court and this Circuit have long recognized that contractual provisions can circumvent these restrictions on taxable costs. *See Crawford Fitting*, 482 U.S. at 444; *Arcadian Fertilizer*, 249 F.3d at 1296. Here, the parties' contract contains broad enough language to cover the award of both taxable and nontaxable costs to litigation arising out of the contract. As the District Court correctly noted, under Florida law, "[p]rovisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced." *Lashkajani v. Lashkajani*, 911 So.2d 1154, 1158 (Fla. 2005); *see also Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004). And, "[t]rial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith." *Id*.

So, the District Court did correctly decide to award nontaxable costs to YPPI, unquestionably the prevailing party. But rather than simply awarding costs

pursuant to the contract, the Court again reduced YPPI's nontaxable costs by 92.5% after applying a mathematical ratio derived from comparing YPPI's jury award with the damages it originally requested.  The District Court provides no further analysis to justify its dramatic reduction in the nontaxable costs provided for under the contract.  This ruling effectively ignores our established precedent which provides that that shifting costs in favor of the prevailing party, is appropriate even in the case of a nominal award, so long as the prevailing party "'obtains judgment on even a fraction of the claims advanced.'" *Lipscher v. LRP Pub., Inc.*, 266 F.3d 1305, 1321 (11th Cir. 2001) (citation omitted).  Although a reduction in costs can be justified, at least in part, on the grounds of minimal success, the District Court's rote application of a mathematical formula does not provide a sufficient basis to overcome the strong presumption in favor of a costs award under the contract.   Nor does a review of the record suggest any misconduct on the part of YPPI sufficient to justify such an extreme reduction in costs even absent a contractual entitlement.  In short, the substantial reduction applied to the nontaxable costs requested by YPPI undermined the intent of the parties and denied YPPI the full benefit of its bargain with Ziplocal.  No "sound basis" for this reduction in nontaxable costs was provided and consequently the District Court abused its discretion in making the award.

14

Accordingly, we **REVERSE** the District Court's order and **REMAND** the case for further proceedings not inconsistent with this opinion.

**SO ORDERED.**