[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 17-11888, 17-12134, 17-12376
Non-Argument Calendar

_____

D.C. Docket No. 8:16-cv-00637-JSM-TGW

NAUSHEEN ZAINULABEDDIN,

Plaintiff-Appellant,

versus

UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(September 5, 2018)

Before ROSENBAUM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Nausheen Zainulabeddin, proceeding *pro se* on appeal, is a former medical
student at the University of South Florida's Morsani College of Medicine (the
"medical school").  After her dismissal from the medical school in May 2013,

Zainulabeddin, who has attention deficit hyperactivity disorder ("ADHD"), sued the University of South Florida Board of Trustees ("USF"), contending that she was discriminated against due to that disability and that USF otherwise breached its obligations to her. She brought discrimination and retaliation claims under the Rehabilitation Act, 29 U.S.C. § 794, and claims of breach of fiduciary duty and negligent misrepresentation under Florida law. The district court granted summary judgment to USF, denied her post-judgment motions for reconsideration of that ruling and recusal of the district judge, and granted USF's motion to tax costs. Zainulabeddin appeals all of these rulings, which we have consolidated. After careful review, we affirm the district court in all respects.

## I. Factual Background[1]

In 2008, Zainulabeddin was "informally" diagnosed with ADHD or generalized anxiety disorder, or both, and she began taking ADHD medication. The following year, in August of 2009, she began classes at the medical school. The medical-doctor program has four academic years, which must be completed within a total of six years. Zainulabeddin completed two academic years in a total of four years. She was dismissed from the program in March 2013.

---

[1] When reviewing a decision on summary judgment, we view all the evidence and draw all reasonable inferences in favor of the non-moving party—in this case, Zainulabeddin. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

Zainulabeddin began having academic difficulties in her first year in the program (academic year 2009–10). After doing poorly on a cardiology exam in March 2010, she contacted Dr. Steven Specter, the Associate Dean for Student Affairs at the medical school. Concerned about failing out of school, she disclosed the informal ADHD diagnosis to Dr. Specter, who suggested she see a psychiatrist for her anxiety. She did so. The school psychiatrist told her that disability accommodations would be the next step if her medications were not working. But before she could be accommodated, the psychiatrist explained, she would have to receive a formal diagnosis.

Zainulabeddin met with Dr. Specter again and asked whether she should take a leave of absence from the program. Dr. Specter advised against it, suggesting that she try to finish the remaining month and a half of the academic year. She testified that she likewise felt at that time that she did not need a leave of absence. Zainulabeddin finished the academic year, but she failed all but one class. She stopped taking her ADHD medication once the academic year ended.

Because Zainulabeddin failed her first year of the medical-doctor program, the medical school's Academic Performance Review Committee (the "Committee")—composed of the medical school's course directors—required her to obtain a "comprehensive assessment of [her] learning style," at the school's expense. Dr. Mike Schoenberg, a psychologist employed by USF, conducted the

3

assessment and then prepared a written report, which he submitted to Dr. Specter. Zainulabeddin refers to this assessment as a "neuropsychological evaluation," so we do, too.

Zainulabeddin met with Dr. Specter in October 2010 to go over the results of her neuropsychological evaluation. Dr. Specter stated that, based on his review of Dr. Schoenberg's report, there was "nothing to worry about" and she should continue studying hard. At that time, Zainulabeddin was unsure whether she had ADHD or whether she qualified for accommodations, and she did not request any accommodations. She believed at the time that her attention difficulties may have been caused by challenging life circumstances rather than ADHD.

For academic year 2010–11, her second year, the Committee permitted Zainulabeddin to repeat her first-year curriculum while on academic probation. She completed the repeat first year after being allowed to remediate one class.

Zainulabeddin was taken off probation for her second-year coursework during academic year 2011–12, her third year. She failed two courses in her first semester, however, and the Committee dismissed her from the medical school in January 2012 and denied her first appeal of the dismissal. Zainulabeddin had not been taking ADHD medication since April 2010.

After her appeal was denied, Zainulabeddin requested and obtained a copy of her neuropsychological evaluation from Dr. Specter. Contrary to Dr. Specter's

4

earlier statements that the evaluation revealed "nothing to worry about," the evaluation actually indicated diagnostic impressions of ADHD, and it said that she qualified for accommodations—testing in a distraction-free environment—based on having attention difficulties or ADHD, or both.  Dr. Specter apologized for his earlier misrepresentation and said he would correct his mistake by arranging a meeting with Committee.[2]  The Committee then reversed its decision, citing "new information" not previously available, and reinstated her on academic probation. Because the reinstatement decision occurred midway through the semester, the Committee put her on a leave of absence for the rest of the 2011–12 academic year.  Meanwhile, Zainulabeddin resumed taking ADHD medication in February 2012, once she received a copy of the neuropsychological evaluation.

Zainulabeddin returned in the fall for academic year 2012–13, her fourth year in the program, to repeat the second-year curriculum. That year, she took all exams with accommodations, including increased time and a distraction-free environment.  Her instructors also permitted her to view lectures online from her home rather than attending class.  Nevertheless, she still failed two courses: Doctoring II and Evidence Based Clinical Reasoning II ("EBCR II").

Zainulabeddin believes she was singled out to fail these courses because, among other things, she received "U" or "unsatisfactory" grades, rather than the

---

[2] Dr. Specter disputed Zainulabeddin's testimony on this fact, but we resolve this dispute in her favor.

"T" or "temporary" grades that, according to her, other failing students received. Testimony and documents reflect that T grades are not reported on a student's transcript and are used to designate the need to correct a minor or narrow issue. Once corrected, the T grade is converted to a passing grade. U grades, by contrast, are reported on transcripts and used to designate more global deficiencies.

In light of her two failed courses and her prior academic difficulties, the Committee decided to dismiss Zainulabeddin from the medical school on March 14, 2013. She appealed. While her appeal was pending, she was allowed to remediate the two courses she had failed, and she ultimately passed both courses, thereby completing the second-year curriculum. Nevertheless, despite her remediation, the medical school refused to reconsider its dismissal decision and denied her appeal in May 2013.

Meanwhile, on March 12, 2013, two days before the Committee dismissed her from the program, Zainulabeddin contacted Dr. Frazier Stevenson about obtaining accommodations for an upcoming test called the Comprehensive Basic Science Exam ("CBSE"). Because the test was administered by the National Board of Medical Examiners ("NBME"), her accommodations had to be arranged with that organization. The medical school contacted the NBME to arrange disability accommodations for Zainulabeddin, though, ultimately, she did not take the exam that year because she was dismissed from the medical school.

## II.  Procedural History

Zainulabeddin filed this case with the assistance of counsel on January 22, 2016.  She claimed that USF violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, by dismissing her from the medical school on the basis of disability and retaliating against her for requesting disability accommodations for the CBSE.  She alleged state-law claims of breach of fiduciary duty and negligent representation against Dr. Specter, relating to his failure to accurately convey to her the results of the neuropsychological evaluation in October 2010.[3]

After removing the case to federal court, USF moved for summary judgment, contending that Zainulabeddin's Rehabilitation Act claims failed on the merits and that her state-law claims were barred either by the statute of limitations or by sovereign immunity.  In response, Zainulabeddin (1) argued that sufficient evidence of discrimination and retaliation existed; (2) conceded that her breach-of-fiduciary-duty claim was "facially barred by the applicable statute of limitations" but asserted that USF was equitably estopped from asserting that defense because its "affirmative misconduct" caused her to forgo bringing suit at an earlier time; and (3) disputed that USF was entitled to sovereign immunity against the state-law claims.

---

[3] Zainulabeddin conceded at summary judgment that her remaining state-law claims—for breach of contract and unjust enrichment—were barred by sovereign immunity, and she does not address these claims directly on appeal.  We therefore deem them abandoned.

The district court granted summary judgment to USF. The court found insufficient evidence of discrimination or retaliation. As for Zainulabeddin's state-law claims, the court concluded that her breach-of-fiduciary-duty claim was time barred and that her negligent-representation claim failed either because it was time barred or because USF was protected by sovereign immunity.

Post-judgment, Zainulabeddin filed a motion seeking reconsideration of the summary-judgment ruling and recusal of the district judge. In support of her recusal request, she claimed that the judge had a "potentially significant conflict of interest" because he was a member of the USF Economic Development Board and Chair of the USF School of Psychology Advisory Committee. The district judge denied the motion, stating that he had not served on any board or committee for USF since the late 1990s and that he had no involvement with the medical school.

Meanwhile, USF moved to tax certain costs of litigation against Zainulabeddin. USF sought a total of $5,802.15 for the costs of the removal fee, service of subpoenas, deposition transcripts, witness fees, and copying fees. Over Zainulabeddin's opposition, the district court determined that USF was entitled to recover a total of $5,382.15 in costs and then declined to exercise its discretion to reduce the costs award. The court explained that Zainulabeddin had not provided sufficient documentation of her inability to pay the costs award and that USF should not be penalized through the denial of its costs.

8

Zainulabeddin timely appealed the grant of summary judgment against her (No. 17-11888), the denial of her motion for reconsideration/recusal (No. 17-12134), and the order awarding costs to USF (No. 17-12376). We granted her motion to consolidate these appeals. We address each ruling in turn.

### III. Summary Judgment (No. 17-11888)

We review de novo a district court's grant of summary judgment, construing all facts and drawing all reasonable inferences in favor of the non-moving party. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry at summary judgment is whether the evidence, construed in the light most favorable to the non-moving party, would permit a reasonable jury to return a verdict in her favor. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996).

We liberally construe briefs filed by *pro se* parties. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Even so, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Id.*

### A.    *Rehabilitation Act*

The Rehabilitation Act prohibits any program or activity that receives federal financial assistance, which includes the medical school here, from

9

discriminating against any "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). In the context of postsecondary education, an otherwise qualified individual is a person who is able to meet the academic and technical standards requisite to admission or participation in the education program or activity. *See Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (*en banc*); 34 C.F.R. § 104.3(l)(3). The district court found that Zainulabeddin was not an "otherwise qualified" individual, but we do not reach that issue.[4] No reasonable jury could conclude that she was discriminated against solely by reason of her disability.

Discrimination claims under the Rehabilitation Act are governed by the same standards used in cases brought under the Americans with Disabilities Act ("ADA").[5] *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). When a plaintiff offers circumstantial evidence to prove a discrimination claim, courts analyze the claim using the burden-shifting framework outlined in *McDonnell Douglas Corp.*

---

[4] Because the district court's analysis on this issue was bound up with the inquiry into whether USF's proffered reason was pretextual, we consider whether Zainulabeddin met the medical school's academic standards at the pretext stage of the analysis. *Cf. Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (stating that issues "bound up in the inquiry into whether [the employer's] proffered reason . . . was a pretext for discrimination" should be considered "at the pretext stage of the analysis").

[5] Zainulabeddin asserts that the district court incorrectly applied Title I of the ADA to her Rehabilitation Act claims, when Title II of the ADA provided the proper standards. She does not explain in clear terms what she means by this, however. And under our precedent, the district court properly applied the analysis for disability-discrimination claims under the ADA to her discrimination claim under the Rehabilitation Act, which required her to prove discrimination "solely by reason of her . . . disability."

10

*v. Green*, 411 U.S. 792 (1973). *See Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000). Under this framework, if a plaintiff establishes a *prima facie* case of discrimination and the employer proffers a legitimate, non-discriminatory reason for its adverse action against the plaintiff, then the plaintiff must show that the employer's proffered reason was a pretext for discrimination. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272–73 (11th Cir. 2002).

In certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of her disability. *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 412–13 (1979). However, the Rehabilitation Act does not require an educational institution to lower or effect substantial modifications of standards to accommodate a student's disability. *Id.* at 413. Where the purpose of an educational program is to train persons to serve their profession in customary ways, an institution's refusal to make "major adjustments" to its program does not amount to disability-based discrimination. *Id.*

The Rehabilitation Act also incorporates the anti-retaliation provision from the ADA. *See* 29 U.S.C. §§ 791(f), 793(d), 794(d). Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This anti-retaliation provision is similar to Title VII's

11

prohibition on retaliation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, we assess retaliation claims pursuant to the Rehabilitation Act under the framework used for Title VII retaliation claims. *See id.*

Here, the district court properly granted summary judgment to USF. Construing the evidence and drawing all reasonable inferences in her favor, no reasonable jury could conclude that USF discriminated against Zainulabeddin because of her disability, refused to provide reasonable accommodations, or retaliated against her for requesting accommodations. Rather, the record makes clear that Zainulabeddin was dismissed from the program for poor academic performance.

USF produced ample and largely uncontroverted evidence of Zainulabeddin's academic difficulties throughout her four years of study at the medical school. She was initially dismissed from the program in January 2012 after taking two years to complete the first-year curriculum and failing two second-year courses in the first semester of her third year. Eventually, the Committee reinstated her and allowed her to repeat the second-year curriculum with accommodations for her ADHD, including increased time for exams and a distraction-free environment. She also received numerous extensions to complete assignments and exams. But she continued to struggle nonetheless, failing two

courses, Doctoring II and EBCR II, which she then had to remediate to earn passing grades. In short, Zainulabeddin finished two years of coursework in four years and was still struggling to pass even with disability accommodations.

Because the medical school required all of its students to finish the four-year medical-doctor program in six years, the Committee had substantial reason to doubt that Zainulabeddin could successfully complete the remaining two years of the program in the maximum time allotted. Moreover, its decision to dismiss her from the program was consistent with its policies as reflected in the student handbook. According to the student handbook, a student was subject to dismissal from the program at any time if she had more than one failing grade at a time or failed any course while on academic probation. Additionally, the handbook provided that a student was subject to dismissal even if she had passing performance where her record consisted of multiple deficiencies or failures with subsequent remediation. All of these deficiencies are reflected in Zainulabeddin's academic record, including, most notably, that of her fourth and final year, when she failed two courses while on probation and then passed only with subsequent remediation. Thus, the Committee's decision to dismiss Zainulabeddin from the program was fully supported by her academic record and the medical school's policies.

Zainulabeddin has not shown that USF's legitimate, non-discriminatory and non-retaliatory reason for her dismissal—poor academic performance—was actually a smokescreen for disability discrimination or retaliation.    Liberally construed on appeal, Zainulabeddin's briefing claims that USF refused to accommodate her ADHD and held her to a different academic standard than other, non-disabled students.[6]  The record does not support these contentions, however.

USF did not fail to provide reasonable accommodations.  Zainulabeddin did not request accommodations until after January 2012 and, in fact, did not believe that she needed any before that time.[7]  USF was not obligated to accommodate her before she requested accommodations.  *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) ("[A] plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation.").  Then, once Zainulabeddin requested accommodations,

---

[6] In addition, Zainulabeddin asserts that Congress abrogated state sovereign immunity for claims brought under the ADA and that her federal claims were not time barred because the federal fallback statute, 28 U.S.C. § 1658, applies.  These arguments appear to be responding, albeit in misguided fashion, to the court's resolution of her state-law claims.  Therefore, we address them, to the extent relevant, below.  To the extent she intends these arguments to relate to her Rehabilitation Act claims, they provide no basis for relief because the court did not find that USF was entitled to sovereign immunity against her federal-law claims or conclude that these claims were untimely.

[7] Zainulabeddin's earlier question to Dr. Specter about taking a leave of absence cannot reasonably be construed as a request for an accommodation because she did not clearly request a leave of absence and did not feel that she needed a leave of absence at that time.  Nor did she attribute her academic difficulties at that time to her ADHD.

14

USF reinstated her and permitted her to repeat her second-year coursework with accommodations, and she does not clearly identify any deficiency in the accommodations she received after February 2012.

Further, the record does not support Zainulabeddin's claim that USF held her to a different standard than other students because of her disability. There is no evidence that she was held to a different standard than any other repeating student, whether disabled or not. In fact, she conceded that USF had a standard that repeating students "should not fail any classes, period."

Nor can Zainulabeddin rely on her status as a repeating student on probation as evidence of disability discrimination in this case. While the medical school may have had reason to suspect that her poor academic performance in previous years was due to her unaccommodated disability, that recognition was embodied in the decision to allow her to repeat the second-year curriculum with accommodations. In other words, the Committee's decision indicates its judgment that her unaccommodated ADHD may have inhibited her academic performance, so it gave her a chance to prove otherwise. Despite that recognition, however, USF was not required to make "major adjustments" to its medical-doctor program to accommodate her, by, for example, extending its normal maximum time limit to complete the program or altering its rules for students who fail an academic year. *See Davis*, 442 U.S. at 413. Because she ultimately failed two courses even after

15

receiving disability accommodations, the Committee's subsequent dismissal decision cannot reasonably be attributed to discrimination. Nor is there any evidence of retaliation, since Dr. Stevenson was not part of the Committee and did not have any clear input into that decision.

Zainulabeddin also takes issue with her grades in the two courses she failed in her fourth year. But she has not rebutted the ample record evidence from multiple sources, recounted by the court in its thorough summary-judgment ruling, showing that she had significant and wide-ranging difficulties in her EBCR II and Doctoring II courses, despite her instructors' efforts to ensure she passed. As the district court explained, she failed the final exam in Evidence-Based Medicine portion of EBCR II.[8] With regard to the Doctoring II course, Zainulabeddin received negative evaluations from multiple sources throughout the course, including a negative midterm evaluation and a "below expectations" rating on two of the three stations of her final exam from two evaluators who had no prior experience with her. Finally, like the district court, we can see nothing discriminatory in Zainulabeddin's receipt of "U" grades rather than "T" grades, even if the grading system is otherwise subject to criticism.

_____

[8] Zainulabeddin claims that she should have received a passing grade in the Evidence-Based Medicine portion of EBCR II because she received a 67.5 grade on the final, which, combined with her presentation score, amounted to a passing grade. However, we disregard this contention because, at her deposition, she testified that she received a 65 on the final the first time she took it. She also prepared a summary of her grades in EBCR II that listed her final exam score as 65. And as the district court explained, because the exam constituted 90% of her grade, she could not have passed the course with a 65 on the final exam.

For all of these reasons, no reasonable jury could conclude that USF was motivated by discriminatory or retaliatory animus in dismissing Zainulabeddin from the medical doctor program. We therefore affirm the district court's grant of summary judgment to USF on her claims under the Rehabilitation Act.

## B.    State-Law Claims

Zainulabeddin's claims for breach of fiduciary duty and negligent misrepresentation arise out of Dr. Specter's failure to inform her that she qualified for disability accommodations in October 2010. The court concluded that the breach-of-fiduciary claim was time barred and that the negligent-misrepresentation claim either was time barred or barred by sovereign immunity.

Taking the timeliness issue first, Zainulabeddin offers two reasons why, in her view, her claims were improperly dismissed as untimely. First, she asserts, the limitations period did not begin to run until she discovered the contents of her neuropsychological evaluation in February 2012. Second, she argues, USF is equitably estopped from asserting a statute-of-limitations defense. Neither contention is availing.

Under Florida law, a four-year limitations period applies to claims for negligence, including breach of fiduciary duty. *See* Fla. Stat. § 95.11(3); *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla. Dist. Ct. App. 2007). In general, "a cause of action accrues or begins to run when the last element of the cause of action

17

occurs." *Davis v. Monahan*, 832 So.2d 708, 709 (Fla. 2002). This rule is subject to an exception. Under the "delayed discovery" doctrine, "a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Hearndon v. Graham*, 767 So.2d 1179, 1184 (Fla. 2000). The Florida Supreme Court has made clear, however, that this doctrine does not apply unless the Florida legislature has incorporated it into the relevant statute of limitations. *See Davis*, 832 So.2d at 701–11.

Here, the delayed discovery doctrine does not apply to Zainulabeddin's claims because the relevant statute of limitations does not incorporate that doctrine. *See Patten*, 965 So.2d at 1224 ("[T]he trial court properly determined that the delayed discovery doctrine does not apply to Patten's breach of fiduciary duty count."). And she does not otherwise dispute the district court's finding that her claims accrued in October 2010. Because she did not file this action until January 2016, well after the four-year limitations period ran, the court properly concluded that her claims were untimely.

Furthermore, the district court properly concluded that equitable estoppel did not apply. "Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct." *Major League Baseball v. Morsani*, 790 So.2d 1071, 1077 (Fla. 2001). Florida courts apply equitable estoppel to prevent a defendant from asserting the statute of limitations

18

as a defense when the defendant's misconduct induced the plaintiff to forbear bringing suit within the applicable limitations period. *See id.* at 1078–79.

Here, however, USF's actions did not prevent her from filing suit within the limitations period. By February 2012, she knew that Dr. Specter had misrepresented the contents of her neuropsychological evaluation, and by May 2013, she knew that her appeal of her second dismissal from the program had been denied, leaving her with well over a year in which to file suit. Because USF's conduct did not prevent her from filing on time, we conclude that equitable estoppel does not apply.

On the issue of sovereign immunity, Zainulabeddin fails to address the district court's conclusion that sovereign immunity applies to her negligent-misrepresentation claim to the extent it was based on bad faith rather than negligence. While she makes reference to Congress's abrogation of state immunity through the ADA or the Rehabilitation Act, these issues of federal law are not relevant to her state-law claims. We conclude, therefore, that she has abandoned any challenge on this issue. *See Timson*, 518 F.3d at 874.

In any case, we cannot say that the district court erred. Under Florida law, the state and its agencies have sovereign immunity and cannot be sued unless the Florida legislature has waived that privilege. *See Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So.2d 4, 5 (Fla. 1984). State agencies sharing in that immunity

19

include "state university boards of trustees," like the defendant here.  *See* Fla. Stat. § 768.28(2).  Although Florida has generally waived immunity for torts, it has retained immunity for torts committed in bad faith by its employees.  Fla. Stat. § 768.28(9).  Zainulabeddin's negligent-misrepresentation claim, if based on a theory of bad faith, was barred by sovereign immunity because Florida has not waived immunity for torts involving fraud.  And if based on a negligence theory, it was time barred for the reasons explained above.  Accordingly, we affirm the grant of summary judgment on her state-law claims.

### IV.  Reconsideration/Recusal (No. 17-12134)

Zainulabeddin contends that Judge Moody, the district judge who handled her case, should have recused himself because he previously served as a member of the USF Economic Development Board and the Chair of the USF School of Psychology Advisory Committee.

We review a judge's decision not to recuse for abuse of discretion.  *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001).  Recusal is required in any proceeding in which the judge's impartiality might reasonably be questioned—that is, where an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality.  28 U.S.C. § 455(a); *Curves, LLC v. Spalding County, Ga.*, 685 F.3d 1284, 1287 (11th Cir. 2012).  A judge must also disqualify himself where he has a personal bias concerning a party.  28 U.S.C. § 455(b)(1).

20

Section § 455(b)(1) requires that the judge actually have a personal bias or prejudice concerning a party and is narrower than § 455(a). *Curves, LLC*, 685 F.3d at 1288.

Here, the district judge did not abuse his discretion by denying Zainulabeddin's motion for recusal and declining to recuse himself. Under the narrower standard of § 455(b)(1), Zainulabeddin presented no evidence of actual bias, so Judge Moody was not required to recuse himself under that section. *See Curves, LLC*, 685 F.3d at 1288. Nor was Judge Moody required to recuse under the broader standard of § 455(a). A fully informed lay observer would not entertain significant doubt about Judge Moody's impartiality. *See id.* at 1287. As Judge Moody stated, he had no involvement with the medical school and had not served on the two committees since the late 1990s. Zainulabeddin has not raised any argument or presented any evidence refuting these statements. Accordingly, Judge Moody did not abuse his discretion by denying Zainulabeddin's motion for recusal and declining to recuse himself.

As for the district court's denial of Zainulabeddin's motion for reconsideration, she does not directly address that decision, so we conclude that she has abandoned her challenge to that ruling. *See Timson*, 518 F.3d at 874. In any event, having reviewed her motion and the supporting documentation, we cannot say that the district court abused its discretion in denying the motion on the

ground that it did not call into doubt the correctness of the summary-judgment ruling.

## V. Costs (No. 17-12376)

We review costs awards for an abuse of discretion.  *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017).  "Under the abuse of discretion standard, the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but whether the premise upon which the district court exercised its discretion was correct."  *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991).

Costs other than attorney's fees should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1).  However, courts may only tax costs authorized by statute. *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000).  Courts may tax costs including fees for service, witnesses, and depositions necessarily obtained for use in the case.  *See id.*; 28 U.S.C. § 1920.  The party seeking an award of costs must submit a request that enables the court to determine the party's entitlement to those costs.  *Loranger v. Stierham*, 10 F.3d 776, 784 (11th Cir. 1994).  Even where the non-prevailing party is indigent, the district court needs a sound basis to overcome the strong presumption that a prevailing party is entitled to costs.  *See Mathews v. Crosby*, 480 F.3d 1265, 1276–77 (11th Cir. 2007).

22

Here, the district court did not abuse its discretion by awarding costs to USF. The court awarded costs for filing fees, service, transcripts and copies necessarily obtained for use in the case, and witnesses, all of which are statutorily accepted costs. *See* 28 U.S.C. § 1920. The court specifically discussed each cost requested by USF and reduced the cost award to the extent the expenses were unnecessary.

As in *Mathews*, Zainulabeddin primarily argues that she is indigent and should not have to pay USF's costs. *See* 480 F.3d at 1276–77. But even where the non-prevailing party is indigent, there must be a sound basis to overcome the presumption that the prevailing party is entitled to costs, and Zainulabeddin has not provided one. *See id.* Accordingly, the district court did not abuse its discretion when it awarded costs to USF.

## VI.  Outstanding Motions

Finally, we address several outstanding motions. Zainulabeddin has filed motions (1) to exceed the type-volume limitation for a motion for an injunction pending appeal; (2) for a "permanent" injunction pending appeal; (3) to file redacted exhibits in support of her injunction motion; and (4) to expedite ruling on the motion for an injunction. Because we have resolved her appeals and concluded that she is not entitled to relief on the merits of her claims, we **DENY AS MOOT** these motions.

Zainulabeddin has also filed a motion for sanctions against USF, and USF has responded in kind. We **DENY** both motions. Sanctions against USF are not warranted because Zainulabeddin's numerous allegations of unethical conduct on the part of USF and its counsel are not supported by any evidence in the record, and its challenged response to one of her motions on appeal was not unreasonable or vexatious. At the same time, we cannot conclude that these same allegations, though inflammatory and unsupported, warrant the imposition of sanctions against Zainulabeddin, particularly in light of her *pro se* status and the stress of this saga, which should now come to a close.

## VII.

This case is unfortunate. We acknowledge Zainulabeddin's desire to become a medical doctor and her belief that she can realize that goal, but the record is clear that the medical school did not discriminate or retaliate against her when it dismissed her from the medical-doctor program for poor academic performance. We therefore affirm the district court's grant of summary judgment to USF under the Rehabilitation Act, and we affirm the court's other rulings for the reasons previously stated.

**AFFIRMED.**

24