**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11251

Non-Argument Calendar

————————————

PATRICK J.P. LEACH,

*Plaintiff-Appellant,*

*versus*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-80315-AMC

————————————

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Patrick Leach, proceeding *pro se*, appeals the district court's decision to affirm the Social Security Administration's denial of his claim for disability insurance benefits and supplemental security

income. First, he contends that substantial evidence does not support the Administrative Law Judge's determination that his ailments were not listed-level impairments under the Social Security regulations. Second, he argues that the ALJ erred in finding that his residual functional capacity meant that he could perform certain work and erred in improperly relying on a vocational expert. Third, Leach argues that the Appeals Council acted arbitrarily and capriciously when it denied his second request for an extension of time to file exceptions to the ALJ's decision, and that the Appeals Council should have also considered as evidence a letter from the Social Security Administration. He further contends that the Appeals Council violated his due process rights in these respects. We discuss each issue in turn below. After review, we affirm.

## I.

When the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the final administrative decision. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021). Our "review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Whether the ALJ applied the proper legal standards is reviewed *de novo*. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

Leach argues that substantial evidence did not support the ALJ's rejection of his claim. Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation modified). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). So long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also* 42 U.S.C. § 405(g). Therefore, because there was substantial evidence to support the ALJ's determination that Leach's impairment did not qualify as a listed impairment, we affirm the ALJ's decision.

Eligibility for supplemental security income and disability insurance benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). A claimant is disabled if he cannot engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death, or which has lasted or can be expected to last for at least 12 months. *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). And  this  impairment must, among other requirements, meet the definition of a listed impairment under the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2012); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

As a part of this analysis, musculoskeletal disorders—some of Leach's chief complaints—are, as relevant here, analyzed in

listings 1.00, 1.02, and 1.04. 20 C.F.R. § 404, Subpart P, App'x 1, Part A § 1.00 (2012). A musculoskeletal disorder satisfies the functional criteria of a listing when medical records show the presence of at least one of the following impairment-related limitations: (a) a documented medical need to use a mobility device, such as a walker; (b) the "inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements," and a documented medical need for a one-handed assistance device; or (c) an "inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements." *Id.* § 1.00(E)(3)(a)-(c).

And in instances where a claimant's musculoskeletal disorder results in a compromised nerve root, such as degenerative disc disease or issues in the lumbar spine, to meet a listing, the claimant must demonstrate each of the following symptoms: (a) radicular distribution of pain, paresthesia, or muscle fatigue; (b) radicular distribution of neurological signs present during a physical examination, such as muscle weakness, signs of root irritation or compression, sensory changes evidenced by decreased sensation, or sensory nerve deficits; (c) medical imaging consistent with a compromised nerve root; and (d) impairment-related physical limitations of musculoskeletal functioning that has lasted, or is expected to last, for 12 months, with medical documentation at least one functional criteria in § 1.00(E)(3)(a)-(c). *Id.* § 1.15(A)-(D).

Loss of central visual acuity, another of Leach's complaints, is under listing 2.02. *Id*. § 2.02. To qualify under this listing, the remaining vision in a claimant's better eye must be 20/200 or less. *Id*. Weight loss due to a digestive disorder, yet another of Leach's alleged ailments, falls under listing 5.08, which is evaluated using the claimant's body mass index. *Id*. § 5.00(F).

Finally, Leach complains of various mental ailments. As relevant here, depressive, bipolar, and related orders are under listing 12.04, somatic symptoms and related disorders are under listing 12.07, personality and impulse control disorders are under listing 12.08, and trauma and stressor related disorders are under listing 12.15. *Id*. § 12.00(A)(1).

Each of these listings assesses functional criteria in a section known as "Paragraph B." *Id*. § 12.00(A)(2)(b). Paragraph B requires the claimant's mental disorders to "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning," which are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id*. An "extreme limitation" means the claimant cannot "function in this area independently, appropriately, effectively, and on a sustained basis." *Id*. § 12.00(F)(2)(C). A "marked limitation," on the other hand, means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id*. 12.00(F)(2)(d).

Based on the above legal standards, there was substantial evidence to support the ALJ's determination that Leach's infirmities

6                    Opinion of the Court                    24-11251

did not meet the requirements for a listed impairment. The ALJ analyzed several listings in evaluating Leach's claims, namely listings 1.02 and 1.04 (musculoskeletal diseases), 2.02 (visual acuity), 5.08 (weight loss), and 12.04, 12.07, 12.08, and 12.15 (depression, anxiety, somatic symptom disorders, personality disorders, and trauma related disorders). 20 C.F.R. § 404, Subpart P, App'x 1, Part A §§ 1.00, 1.14, 2.01, 5.00, 12.00. The ALJ, based on substantial evidence, determined that Leach did not meet the requirements for each listing.

Starting with listings 1.02 and 1.04, there is no evidence in the medical record that Leach, at the relevant periods, had a musculoskeletal disorder that necessitated the use of a mobility device. The records also do not show that Leach suffered an inability to "complete work-related activities involving fine and gross movements," that he needed a one-handed assistance device, or that he was unable to use his "upper extremities to the extent that neither can be used . . . [for] work-related activities involving fine and gross movements." *Id.* § 1.00(E)(3)(a)-(c). Further, the medical records do not demonstrate that Leach had a musculoskeletal disorder that resulted in a compromise of his nerve root that resulted in radicular distribution of pain, paresthesia, or muscle fatigue; radicular distribution of neurological signs present during a physical examination; medical imaging consistent with a compromise of the nerve root; or impairment-related physical limitations of musculoskeletal functioning that is expected to last at least 12 months. *Id.* § 1.14(A)-(D).

In addition, during the time period relevant to his disability claim, Leach's medical records do not show that Leach complained of persistent back or right shoulder pain or neuropathy. Though imaging did show bullet fragments around his scapula, no other degenerative diagnoses were made around his shoulder. Moreover, testing did not show that he had an inability to use any upper extremities due to his pain, and he continued to score well on strength tests for both arms. And while imaging showed that Leach suffered from bulging discs, these images also demonstrated that he had experienced no degeneration in his spine.

Further confirming that his musculoskeletal disorder did not meet the requirements for a listed impairment, the testing done for neuropathy in his lower extremities did not show that Leach lacked fine motor skills. And Leach even admitted that he drove regularly, which, of course, requires the use of his lower extremities. He similarly had the ability to exercise and ambulate normally. Indeed, Leach told several medical professionals that he could do pushups and chin-ups, and that he walked frequently.

Turning to listings 2.02 (visual acuity) and 5.08 (weight loss), there was again substantial evidence to support the ALJ's decision that Leach's ailments did not meet the listed requirements. Leach's records showed that, during all relevant periods, his eyesight was 20/60—far better than the required 20/200 (or worse) necessary under 2.02. 20. C.F.R. § 404, Subpart P, App'x 1, Part A § 2.02. And, as for listing 5.08, Leach's medical records did not contain evidence to suggest that he either had an inability to eat or to maintain his

weight due to any digestive disorders as the listing requires. *Id.* § 5.00(F).

As for Leach's mental health claims under listings 12.04, 12.07, 12.08, and 12.15, there was likewise substantial evidence to support the ALJ's determination that Leach failed to satisfy the listing criteria. In particular, the ALJ found that Leach did not meet Paragraph B's requirements. His medical records did demonstrate that Leach had been diagnosed with PTSD, antisocial personality disorder, schizoaffective disorder, depression, bipolar disorder, and pain disorder. But most of his records suggest that he was generally alert, oriented, cooperative, and easy to work with. He also attended school during part of the relevant period. As a result, his records do not show that Leach had an "extreme" limitation in one of the four key areas of mental functioning, nor do they support a conclusion that he had a "marked" limitation in two of the four areas of mental functioning. 20 C.F.R. § 404, Subpart P, App'x 1, Part A § 12.00(F) (2012).

And Leach's argument that the ALJ improperly discounted his treating physicians' opinions and gave too much weight to the non-treating physicians' opinions changes nothing. The ALJ gave appropriate weight to these opinions, as the regulations stipulate that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a) (2012). As such, in considering their opinions within the evidence as a whole, the ALJ acted

properly. Further, the ALJ did not err, as Leach suggests, in discounting unsupported or contradicted evidence provided by some of the medical experts. The ALJ was entitled to do so as long as he appropriately explained his reasoning as to the relevant opinions' supportability and consistency, as he did here. 20 C.F.R. § 416.920c(a), (b)(2), (c).

For the above reasons, we determine that substantial evidence existed to support the ALJ's decision that Leach did not meet the requirements for a listed impairment.

## II.

Leach also challenges (1) the ALJ's determination that Leach's residual functional capacity meant that he could perform certain work and (2) the ALJ's reliance on a vocational expert. But, because Leach did not raise these arguments before the district court, he has forfeited them.

Arguments not raised before the district court are forfeited, and we generally will not consider those arguments on appeal absent extraordinary circumstances. *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1305 (11th Cir. 2024). We apply this forfeiture rule against *pro se* appellants. *See, e.g.*, *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally . . . issues not briefed on appeal by a *pro se* litigant are deemed abandoned.").

Before the district court, Leach made several arguments attacking the ALJ's consideration of his medical evidence. But at no

point did he challenge the ALJ's determination on his residual functional capacity or the ALJ's reliance on the vocational expert. And none of the extraordinary circumstances contemplated in *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2006), exist here. *See id.* at 1332 (listing as extraordinary circumstances—under which otherwise forfeited arguments may be considered—the following situations: (1) a question of pure law is presented and a grave miscarriage of justice is risked; (2) risked   an appellant had no opportunity to raise an argument previously; (3) interests of substantial justice are at stake; (4) the appropriate resolution of the issue is "beyond any doubt"; and (5) the issue presents significant questions of great public concern). As a result, he forfeited these arguments here. *Flowers*, 97 F.4th at 1305.

## III.

Finally, Leach argues that the Appeals Council acted arbitrarily and capriciously when it denied his second request for an extension of time to file exceptions to the ALJ's decision. He argues that the Appeals Council should have also considered a letter from the Social Security Administration as evidence in his favor. And he further contends the Appeals Council violated his due process rights in these respects. Once again, these arguments fail.

The Administrative Procedure Act, incorporated into the Social Security Act, requires reviewing courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting 5 U.S.C. § 706(2)(A)). An

action that is "arbitrary and capricious" is akin to an action that is an abuse of discretion. *See e.g.*, *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013) (applying arbitrary-and-capricious review to an "exercise of discretion"); *see also Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1207 (11th Cir. 2025) ("Arbitrary-and-capricious review extends . . . to agency decisions exercising discretion . . . ."). And an abuse of discretion occurs when a court "commits a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact." *Yellow Pages Photos, Inc. v. Ziplocal*, 846 F.3d 1159, 1163 (11th Cir. 2017).

Leach's argument that the Appeals Council arbitrarily and capriciously denied his second request for an extension of time fails because there was no such error of judgment, law, or fact. When Leach filed his motion for a second extension of time, the Appeals Council had already given him one extension of his deadline. And it had warned Leach that it would not grant him any additional time. Yet a week after the new deadline passed, Leach asked for a second extension, arguing that his attorney's withdrawal of representation necessitated the extension. But his attorney had withdrawn nearly *five months previously*. As a result, the Appeals Council clearly acted within its discretion in denying Leach's second request for an extension of time to file his exceptions, and this denial was not arbitrary and capricious. *See Yellow Pages Photos, Inc.*, 846 F.3d at 1163.

And Leach forfeited his argument that the Appeals Council erred in not considering a letter from the Social Security Administration as additional evidence, and he forfeited his argument that the Appeals Council violated his due process rights. He did not raise these arguments before the district court. Instead, he argued only that the Appeals Council arbitrarily denied his second request for an extension. And, as above, no extraordinary circumstances apply here. *See Access Now*, 385 F.3d at 1332.

For the above reasons, Leach's arguments that the Appeals Council acted arbitrarily and capriciously fail.

**IV.**

For the reasons stated, we **AFFIRM** the judgment below.