[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15152
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2010
JOHN LEY
CLERK

D. C. Docket No. 03-02989-CV-UWC-V

LAQUARIUS GRAY,
a minor, by and through her
mother and next friend,
Toniko L. Alexander,

Plaintiff-Appellee,

versus

ANTONIO BOSTIC,
individually and in his official
capacity as Deputy Sheriff for
Tuscaloosa County, AL,

Defendant-Appellant,

EDMUND SEXTON, etc., et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 2, 2010)

Before BLACK, CARNES and FAY, Circuit Judges.

CARNES, Circuit Judge:

Neither party has filed a petition for rehearing, but on our own motion we rescind our earlier opinion in this case, see Gray ex rel. Alexander v. Bostic, 570 F.3d 1321 (11th Cir. 2009), and replace it with this one.

This appeal marks the fourth time that this case, which stems from a deputy's arrest of a nine-year-old child, has been before us since it began in 2003. The first time we reversed the district court's dismissal of Laquarius Gray's 42 U.S.C. § 1983 complaint on qualified immunity grounds. Gray v. Bostic, No. 04-12240, slip op. at 18, 22 (11th Cir. Dec. 27, 2004) (Gray I). The second time we affirmed the district court's denial of defendant Antonio Bostic's motion for summary judgment on qualified immunity grounds. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1307 (11th Cir. 2006) (Gray II). The third time we affirmed the district court's grant of judgment as a matter of law against Bostic, because "he lacked even arguable probable cause to arrest Gray." Gray ex rel. Alexander v. Bostic, 264 F. App'x 856, 856 (11th Cir. 2008) (Gray III). This time, the issue is whether the district court abused its discretion under 42 U.S.C. § 1988 by awarding Gray attorney's fees even though the jury awarded her only $1.00 in nominal damages for Bostic's violation of her Fourth Amendment right to be free from illegal seizure.

2

**I.**

Because our opinions in the earlier appeals in this case set out the facts more fully, we offer only a distilled version here. After Gray was reprimanded by her gym teacher for failing to finish an assigned set of jumping jacks, she made a physical threat toward him. Gray II, 458 F.3d at 1300–01. Although a nearby female gym teacher stepped in to handle the situation, Antonio Bostic, who was then a Tuscaloosa County Sheriff's Deputy acting as the school resource officer, intervened. Id. at 1301. He took Gray into an adjacent lobby, where he pulled her arms behind her back and handcuffed her. Id. At the time of the incident the age of Laquarius was nine, and she was in the fourth grade. Gray I, No. 04-12240, slip op. at 2.

Following the district court's entry of judgment as a matter of law against Bostic, which we affirmed, Gray III, 264 F. App'x at 256, a jury awarded Gray $1.00 in damages. Gray then filed a motion for attorney's fees and expenses seeking $78,390. Bostic did not file a response to that motion.[1] The district court

---

[1] Bostic did respond to Gray's earlier motions for attorney's fees, which she filed while Bostic's appeal from the district court's grant of judgment as a matter of law against him on qualified immunity grounds was pending before us. To avoid wasting judicial resources, the district court denied those earlier motions without prejudice but noted that Gray could refile her request for fees if we decided Bostic's appeal in her favor. We did, and she did. Bostic, however, did not refile his opposition.

We would typically decline to consider this issue because Bostic failed to make his arguments to the district court, but because he had already filed an opposition containing those

awarded Gray $70,532.93.  Bostic appealed.

## II.

"We review a district court's order awarding attorney fees for an abuse of discretion," which occurs if the court "fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).  An abuse of discretion also occurs when a district court commits a clear error of judgment.  United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).  The abuse of discretion standard usually implies a range of choices, instead of only one right choice, and often we will affirm even though we would have decided the other way if it had been our choice.  See id.; Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1298 (11th Cir. 2002); McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001); Rasbury v. IRS, 24 F.3d 159, 168 (11th Cir. 1994).  Still, even though determining a "reasonable attorney's fee" is a matter "committed to the sound discretion of a trial judge . . . the judge's discretion is not unlimited." Perdue v. Kenny A. ex rel. Winn, 130 S.Ct. 1662, 1676 (2010); see also Hardt v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149,

arguments and the "proper resolution of this issue is now beyond any doubt," we "choose to exercise our discretion to consider" it.  See Narey v. Dean, 32 F.3d 1521, 1527 (11th Cir. 1994).

4

2158 (2010) ("Statutes vesting judges with such broad discretion are well known in the law, particularly in the attorney's fees context.  Equally well known, however, is the fact that a judge's discretion is not unlimited." (citation and quotation marks omitted).  For that reason and to enable appellate review, the district court must "provide a concise but clear explanation of its reasons for the fee award."  Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983); see also Perdue, 130 S.Ct. at 1676 ("It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination . . . .").

### III.

Only the "prevailing party" is eligible for attorney's fees under 42 U.S.C. § 1988, and a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  Farrar v. Hobby, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573 (1992).  A "plaintiff who wins nominal damages is a prevailing party under § 1988."  Id. at 112, 113 S.Ct at 573.  The fact that a plaintiff succeeds in only a limited way does not strip her of prevailing party status, but the degree of her success is "the most critical factor in determining the reasonableness of a fee award."  Id. at 114, 113 S.Ct. at 574 (quotation marks omitted); see also Hensley, 461 U.S. at 436, 103 S.Ct. at 1941.

5

"When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Farrar, 506 U.S. at 115, 113 S.Ct at 575 (citation omitted). The small amount of money involved in a nominal damage award does not, however, automatically indicate that a particular case is of little importance or that awarding attorney's fees would be an abuse of discretion. See id. at 121, 113 S.Ct. at 578 (O'Connor, J., concurring) ("Nominal relief does not necessarily a nominal victory make."). Other factors, including "the significance of the legal issue on which the plaintiff prevailed" and "the public purpose served," go into determining whether a plaintiff's victory is substantial enough to make it one of those unusual nominal damages cases where the defendant is required to pay the plaintiff's attorney's fees. Id. at 121–22, 113 S.Ct. at 578–79; see also City of Riverside v. Rivera, 477 U.S. 561, 574–75, 106 S.Ct. 2686, 2894 (1986) (plurality opinion); Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996); Cullens v. Ga. Dep't of Transp., 29 F.3d 1489, 1493 (11th Cir. 1994). As the Supreme Court has explained, "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. . . . [T]he public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to

6

a particular plaintiff." Riverside, 477 U.S. at 574, 106 S.Ct at 2694 (quotation marks omitted).

Relying on the statement in Farrar that when a plaintiff recovers only nominal damages "the only reasonable fee is usually no fee at all," 506 U.S. at 115, 113 S.Ct at 575, defendant Bostic contends that plaintiff Gray was not entitled to attorney's fees even though she was technically a prevailing party. He argues not only that the amount of money damages she recovered was de minimis but also that the legal issue on which the plaintiff prevailed had "virtually no significance." He asserts that she "accomplished no public purpose or goal" with this extended litigation. Finally, the defendant argues that the total amount of fees ($68,790) and expenses ($1,742.93) the court awarded the plaintiff "is not proportional" to the $1.00 in nominal damages that the jury awarded her.

In response, the plaintiff contends that at most Farrar supports the proposition that a district court may exercise its discretion to conclude that no attorney's fee award is appropriate where the plaintiff has recovered only nominal damages; it does not stand for the proposition that a court is required to reach that conclusion. She asserts that the district court was within its discretion to award her attorney's fees and that it "devoted considerable judicial effort" to arriving at a reasonable fee. The plaintiff argues that the district court used the proper method

7

to calculate the lodestar amount, then followed this Court's case law when it reduced the lodestar to offset the claims on which she did not prevail and when it enhanced the lodestar to account for the delayed payment of the fees. She maintains that the outcome of this case sends a "clear and unmistakable signal" that society will not tolerate an authority figure violating a child's constitutional rights, which makes this litigation's significance extend "far beyond the jury's award of nominal damages."

## IV.

The district court, in deciding that an award of fees and expenses was warranted notwithstanding the nominal amount of damages, relied on the fact that the one published opinion to have come out of this litigation, our decision in Gray II, had been "cited in more than fifty other cases" during the two years between its issuance on August 7, 2006 and the district court's order awarding fees on July 29, 2008. In measuring "the significance of the legal issue on which the plaintiff prevailed" or "the public purpose served," Farrar, 506 U.S. at 121–22, 113 S.Ct at 578–79 (O'Connor, J., concurring), by totaling up the number of times that our Gray II decision had been cited, the district court misapplied the law and overstated the impact of that decision.

During the two-year period considered by the district court, our decision in

8

Gray II had been cited, by our count, in sixty-four decisions, which is certainly "more than fifty other cases." But only two of those sixty-four decisions cited Gray II for the point of substantive law that this plaintiff prevailed on. See Moretta v. Abbott, 280 F. App'x 823, 825 (11th Cir. 2008) (unpublished)[2] (citing Gray II in support of proposition that the unlawfulness of tasering a six-year-old who was passively standing in the corner of elementary school principal's office "was readily apparent to an official in the shoes of these officers"); T.S. v. State, 863 N.E.2d 362, 372 (Ind. Ct. App. 2007) (citing Gray II and two other decisions for the proposition that "a security or school officer who compels or restrains a student's movement seizes the student for Fourth Amendment purposes"). The substantive point of law underlying the plaintiff's victory in Gray II is the fairly narrow one that a law enforcement officer, acting as a school resource officer, who "handcuff[s] a compliant nine-year-old child for purely punitive purposes" has unreasonably seized the child in violation of the Fourth Amendment. See Gray II, 458 F.3d at 1307. Narrow or not, the nature of that point of law is not the problem with the district court's citation-head-counting method for determining its significance. The problem is that the court's count was grossly overinclusive and

---

[2] Unpublished opinions are not precedential, see 11th Cir. R. 36-2, and we do not cite Moretta for any legal holding or point of law discussed in that opinion. Instead, we cite it solely as a source of facts about the purpose for which it cited the Gray II decision. Cf. 11th Cir. R. 36-2, IOP 7 ("The court may cite to them . . . to establish the . . . facts of the case.").

9

greatly exaggerated the effect of that Gray II holding.

Sixty-two of the sixty-four citations to Gray II do not evidence "the significance of the legal issue on which the plaintiff prevailed" or "the public purpose served," but instead cite the decision for some point of law unrelated to its Fourth Amendment holding. For example, some of those other decisions cite Gray II for general principles of law that were already well established, such as those dealing with our interlocutory jurisdiction over appeals from motions for summary judgment based on qualified immunity. See, e.g., Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008). The plaintiff in this case cannot claim credit for that principle of law and probably would not want to do so even if she could. Some of the other of those sixty-two decisions actually cite Gray II for holdings on issues and claims that the plaintiff lost. For example, some of them cite the part of the decision applying the principle that a defendant cannot be held liable under § 1983 based on a theory of respondeat superior or on the basis of vicarious liability, Gray II, 458 F.3d at 1308 ("Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability."). See Turner v. Marshall, No. 2:05-CV-983, 2008 WL 2559391, at *4–5 (M.D. Ala. June 24, 2008).

It was an error of law for the district court to conclude that simply because

10

Gray II had been cited more than fifty times during a two-year period, the substantive issue on which the plaintiff prevailed must be significant and the public purpose served by her victory must be substantial. That error of law requires us to vacate the court's order awarding the plaintiff fees and expenses and to remand for additional proceedings free from the error. If the district court on remand chooses to do a headcount of citations to our Gray II decision, it should survey all of the citations up to the time of its decision on remand, but it should count only those that cite the Gray II decision for its Fourth Amendment holding. Citations of the decision for humdrum, non-controversial, or long-established points of law do not matter and must not be included in the tabulation.

We do not mean to imply that citation-counting should be the sole or even the primary means of determining the impact that a decision has had, or that it is even necessary to use that means. Indeed, in any case where the fee decision follows soon after a judgment of liability, which is what will usually happen, counting citations will not be possible. Our holding is limited to what counts and what does not when citation-counting is used as a method for assessing the significance of a decision in the plaintiff's favor.

There are other troubling aspects of the district court's order that might have caused us to vacate it even if the court had not made the citation headcount error.

11

For one thing, in deciding whether to award the plaintiff fees and expenses notwithstanding the fact that she received only nominal damages, the district court seems to have considered the fact, if it is a fact, that civil rights cases are unattractive to attorneys in the Northern District of Alabama because attorneys usually have to advance expenses and take the cases on a contingency basis with delayed payment, if they get paid, and have to spend time on the cases that could be more lucratively spent on other legal business. See Gray v. Bostic, No. 05-983, 2008 WL 4191384, at *2 (N.D. Ala. July 29, 2008). Those reasons describe the nature of the beast, and the beast is the same everywhere. If those reasons justified an award of fees and expenses in nominal damages cases in one district, they would justify an award of them in every district and in every case. Yet, the Supreme Court said in Farrar that in nominal damages cases "the only reasonable fee is usually no fee at all." Farrar, 506 U.S. at 115, 113 S.Ct at 575. The district court's reasoning would turn that statement around so that in a nominal damages case there would usually be a fee award. On remand, the district court should apply the principles announced in Farrar, which we have already discussed, and refrain from blazing new trails that the Supreme Court has not cleared. See supra at 5–7.

It also appears that the district court may have used its decision on the

12

expenses and fees issue as something of an end-run around the jury's nominal damages award. At one point in its order the court referred to the jury's decision not to award any actual damages as "considerably unsupported by the evidence." 2008 WL 4191384, at *2. At another point the court noted that the plaintiff's counsel had failed to move for a new trial on damages, but that if he had filed such a motion it "would have been granted," because "[i]n the Court's view, the jury's verdict was abundantly unsupported by the evidence." Id. at *1 n.3. "Abundantly unsupported" is a nice phrase, but we are not convinced that Farrar permits a judge to factor into his attorney's fees decision his doubts about the validity of the jury's still-standing nominal damages verdict. We need not resolve that issue now, however, because the district court's order has to be vacated anyway, and the judge who entered the order having retired, there will be a new judge to handle the remand. We have no reason to believe that the new judge will use that same reasoning.

## V.

In case the district court does decide on remand that attorney's fees are justified in this case, we point out some errors the court made in calculating the amount of them, so that those errors can be avoided on remand.

### A.

13

First, it appears from our review of the record that the district court included in its lodestar calculation hours spent by Gray's counsel during the earlier appeals to this Court. In general a "district court is not authorized, by local rule or otherwise, to control the . . . assessment of attorney's fees for services rendered on appeal. If a party wishes to obtain fees on appeal, he or she must file a [timely] petition with the clerk of this circuit. . . ."[3] Mills by Mills v. Freeman, 118 F.3d 727, 734 (11th Cir. 1997) (quotation marks omitted).

Eleventh Circuit Rule 39-2(e), however, does permit parties to request attorney's fees for appellate work from the district court under certain circumstances. See 11th Cir. R. 39-2(e). Rule 39-2(e) provides:

> When a reversal on appeal, in whole or in part, results in a remand to the district court for trial or other further proceedings (e.g., reversal of order granting summary judgment, or denying a new trial), a party who may be eligible for attorney's fees on appeal after prevailing on the merits upon remand may, in lieu of filing an application for attorney's fees in this court, request attorney's fees for the appeal in a timely application filed with the district court upon disposition of the matter on remand.

Id. Because we reversed the district court's dismissal of Gray's complaint the first

---

[3] At the time Mills was decided, a petition was considered timely if it was filed "within fourteen days of the issuance of the opinion of this court." See 118 F.3d at 734. That language has since been superseded by Eleventh Circuit Rule 39-2(a), which provides that "an application for attorney's fees must be filed with the clerk within 14 days after the time to file a petition for rehearing or rehearing en banc expires, or within 14 days after entry of an order disposing of a timely petition for rehearing or denying a timely petition for rehearing en banc, whichever is later." 11th Cir. R. 39-2(a).

time this case was before us, see Gray I, No. 04-12240, at 22, Rule 39-2(e) gave the district court discretion to include appellate hours spent on that appeal in its fee calculation.

Gray eventually prevailed on the merits when the final judgment awarding $1.00 in damages was entered in her favor. She filed an application for attorney's fees with the district court within the time allotted by that court. Thus, to the extent Gray's application requested fees for hours expended on this case's first trip to us, the district court did not abuse its discretion by including that time within the "reasonable hours" variable of the lodestar formula. The second and third appeals in this case resulted in affirmances, not "reversals . . . result[ing] in a remand." See 11th Cir. R. 39-2(e); see also Common Cause/Ga. v. Billups, 554 F.3d 1340, 1357 (11th Cir. 2009) ("Rule 39-2(e) applies in the limited situation when a decision on remand is the result of a reversal on appeal."). For that reason, the district court should not have awarded fees for any work attributable to those appeals.

## B.

Second, even though the district court used current hourly rates to calculate the lodestar amount, it also added to the resulting amount another fifteen percent to account for the "delay between the time the services were rendered and the payment for the services." The court decided to use both current rates and an

15

enhancement to compensate for the delayed payment because of its general feeling that current rates did "not reflect inflation." That was an abuse of discretion.

Before the Perdue decision, we held that "where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). Other courts had held that the delay factor can be taken care of by either awarding fees at current rates or by enhancing the award to reflect the time value of money. See Missouri v. Jenkins by Agyei, 491 U.S. 274, 282, 109 S.Ct 2463, 2468 (1989) ("In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (quotation marks omitted) (emphasis added)). And before Perdue we had not foreclosed the time value of money approach. Gaines v. Dougherty Cnty. Bd. of Educ., 775 F.2d 1565, 1572 n.14 (11th Cir. 1985) ("[U]sing current rates to account for the delay in payment is somewhat inaccurate as it assumes that the increase in legal fees mirrors that of inflation, which in many instances is not the case. A more accurate method for adjusting for delays in payment would be to apply to the award a figure which is recognized as representing the time value of money over the period of the

16

litigation.").

Our existing circuit law on this subject must be read in light of, and modified to fit, the holdings in Perdue about enhancements for the delay in payment of expenses and fees. The Supreme Court held that an enhancement for delay in payment of expenses "may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted," but enhancements for that purpose "must be reserved for unusual cases." Perdue, 130 S.Ct. at 1674. In those unusual cases where extraordinary outlays are combined with exceptional delay, "the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal." Id.

The Court also held in Perdue that an enhancement for delay in the payment of attorney's fees—similar to an enhancement for delay in payment for expenses—may be justified, but only where there are "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees," especially where "the delay is unjustifiably caused by the defense." Id. at 1675. The Supreme Court recognized that courts compensating for delay in the payment of fees had done so either by using current rates for the entire fee calculation, or by using the rates in place when the work was performed and then

17

adjusting that amount to reflect present value. Id. at 1675 (quoting Missouri v. Jenkins, 491 U.S. at 282, 109 S.Ct. at 2468). In future cases where extraordinary circumstances involving exceptional and unanticipated delay in payment of fees do justify an enhancement of the fee award, the Court told us, the amount that it is enhanced "should be calculated by applying a method similar to that [the Court had] described . . . in connection with exceptional delay in obtaining reimbursement for expenses." Id.

If the district court decides on remand that an award of expenses and fees is justified, we leave it to that court to decide in the first instance if this is one of those unusual cases in which an extraordinary outlay of expenses combined with exceptionally protracted litigation permits an enhancement of the payment for expenses. Likewise, the court should determine if extraordinary circumstances, such as unjustifiable conduct by the defense, caused exceptional delay in the payment of fees justifying an enhancement on that ground. If the district court determines that either or both enhancements are justified, in calculating the amount the court must use a method that is "reasonable, objective, and capable of being reviewed on appeal," id. at 1674.

The last time this case was before the district court, its entire explanation for enhancing the award because of delay in payment was: "Since over the past five

years, the prevailing market rates in the Northern District of Alabama do not reflect inflation, the Court has enhanced the award by fifteen (15%) percent." 2008 WL 4191384. at *4. There is no evidence in the record to support the premise that during the litigation the rate of inflation outstripped the market rate for legal services in that district, and there is no apparent reason why the court chose fifteen percent instead of twelve percent or ten percent or some other enhancement rate. Cf. Perdue, 130 S.Ct. at 1675 ("Why, for example, did the court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%?"). The Supreme Court's Perdue decision sends a loud and clear message that when it comes to enhancing attorney's fee awards: supposition, surmise, speculation, and subjective beliefs are no substitute for factfindings based on evidence. See id. at 1673 ("[A] fee applicant seeking an enhancement must produce specific evidence that supports the award." (quotation marks omitted)); id. at 1674 ("[I]n order to provide a calculation that is objective and reviewable, the trial judge should adjust the attorney's hourly rate in accordance with specific proof . . . ."); id. at 1676 ("[W]hen a trial judge awards an enhancement on an impressionistic basis, a major purpose of the lodestar method—providing an objective and reviewable basis for fees—is undermined." (citation omitted)). That means the amount of any enhancement "must be

19

calculated using a method that is reasonable, objective, and capable of being reviewed on appeal." Id. at 1674. The method the district court used to enhance the lodestar amount in this case was not, as Perdue requires, either reasonable, or objective, or capable of being reviewed on appeal.

There is still another problem with the district court's calculations of the enhancement. Even assuming that one was justified, and even if the fifteen percent figure had been fully substantiated by the evidence, had been objectively calculated, and had been meticulously explained, it would still have been unreasonable to apply that enhancement figure to a fee amount that had been calculated by multiplying all of the hours worked throughout the litigation by current, instead of historical, rates. Where an enhancement is to be applied for delayed payment, the calculation method that has been used is an either-or proposition; it is not a both-and proposition. The enhancement is accomplished "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." Id. at 1675 (emphasis added) (quoting Missouri v. Jenkins, 491 U.S. at 282, 109 S.Ct. at 2468). The district court effectively double-compensated the plaintiffs for delay in payment, and that is never appropriate.

20

## VI.

In summary, the issues we leave for the district court to decide in the first instance on remand are whether the plaintiff is entitled to an award of attorney's fees and expenses under 42 U.S.C. § 1988 even though she recovered only nominal damages; and, if so, whether she is entitled to an enhancement for delay in the payment of expenses and to an enhancement for delay in the payment of attorney's fees; and, if so, how much.

The district court's order awarding fees and expenses to plaintiff is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.