**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10478
Non-Argument Calendar
_____

ROBERT W. OTTO,
JULIE H. HAMILTON,

*Plaintiffs-Appellants-Cross Appellees,*

*versus*

CITY OF BOCA RATON, FLORIDA,

*Defendant-Appellee-Cross Appellant,*

COUNTY OF PALM BEACH, FL,

*Defendant-Appellee.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:18-cv-80771-RLR
_____

Before JILL PRYOR, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Dr. Robert Otto and Dr. Julie Hamilton appeal the district court's order granting in part their motion for prevailing-party costs pursuant to 42 U.S.C. § 1988. We vacate the district court's judgment and remand with instructions for the court to increase the award of attorney's fees to $884,374.77, for a total award of costs in the amount of $885,034.69.

## I.

Otto and Hamilton are marriage and family therapists licensed to practice mental health counseling in Florida. They sued Palm Beach County and the City of Boca Raton in the West Palm Beach division of the Southern District of Florida, alleging that ordinances passed by the County and City prohibiting "Sexual Orientation Change Efforts" (SOCE) counseling violated their own and their clients' First Amendment rights. They sought declaratory and injunctive relief as well as monetary damages. The plaintiffs were represented by attorneys associated with Liberty Counsel, a non-profit organization with an office in Orlando, Florida.

Initially, the district court denied the plaintiffs' motion for a preliminary injunction prohibiting enforcement of the challenged ordinances. But the plaintiffs appealed that order, and we reversed, holding that the ordinances violated the First Amendment. *Otto v. City of Boca Raton*, 981 F.3d 854, 859, 872 (11th Cir. 2020). On remand, after the district court entered a preliminary injunction consistent with the mandate of this Court, the defendants each made offers of judgment under Rule 68 of the Federal Rules of Civil

Procedure.  *See* Fed. R. Civ. P. 68(a).  The plaintiffs settled their claims against the defendants by accepting the offers, and the district court entered its final judgment in the plaintiffs' favor on all their claims.

The plaintiffs then moved for an award of attorney's fees and costs, pursuant to 42 U.S.C. § 1988.  They sought $2,115,018 in attorney's fees ($1,410,012 for approximately 2,275 hours billed at current rates, plus a 150% enhancement to account for the "undesirability" of the case) and $12,864.30 in nontaxable expenses, for a total award of $2,127,882.30.  The defendants objected to several components of the fee application, including the request for current rates; the inclusion of time billed for preparing the fee application, which the defendants contended was excluded by the Rule 68 offers of judgment; the proposed 150% multiplier; and some of the requested expenses.  The magistrate judge agreed with most of the defendant's objections and entered a report recommending that the district court grant the application in part and deny it in part.  The district court adopted the magistrate judge's report and recommendation in its entirety, awarding the plaintiffs $736,227.53 in attorney's fees and $659.92 in expenses.  The plaintiffs now appeal that order.

## II.

We review a "district court's award of attorneys' fees and costs for abuse of discretion, revisiting questions of law de novo and reviewing subsidiary findings of fact for clear error."  *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th

Cir. 2006).  A district court abuses its discretion if it applies the wrong legal standard, follows the wrong procedure, bases its decision on clearly erroneous factual findings, or makes a clear error of judgment.  *Sierra Club v. Hankinson*, 351 F.3d 1358, 1361 (11th Cir. 2003); *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).

## III.

Under 42 U.S.C. § 1988(b), courts have the discretion to award costs, including "a reasonable attorney's fee," to the prevailing party in a civil rights action.  A reasonable attorney's fee is calculated by multiplying "the number of hours reasonably expended on the litigation" by a "reasonable hourly rate."  *Blum v. Stenson*, 465 U.S. 886, 888 (1984).  This "lodestar" method should result in "an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis in the original).  There is a "strong presumption" that the lodestar figure constitutes a reasonable attorney's fee, "but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Id.* at 554.

The fee applicant bears the burden of establishing entitlement to attorney's fees, the number of compensable hours, and the applicable hourly rate.  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  In determining the amount of

an attorney-fee award, trial and appellate courts may rely on their own "knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Id.* (quotation omitted).

The parties here agree that Otto and Hamilton were entitled to attorney's fees and other costs as prevailing parties, but they dispute various aspects of the district court's award, including the number of hours awarded, the hourly rates deemed reasonable, the failure to apply a "multiplier" to the lodestar award, and the denial of certain expenses. We consider each challenged aspect of the award in turn.

## A.

We begin with the plaintiffs' arguments regarding the number of billable hours the district court determined to be reasonable. The plaintiffs argue that the district court improperly denied their requests for "fees-on-fees" and travel time, and unreasonably reduced the remaining hours billed by 25%, for an overall reduction of 33.4%.

## 1.

Ordinarily, the prevailing party in a civil rights action like this one is entitled to "fees-on-fees"—fees incurred when litigating the amount of an attorney-fee award under § 1988(b). *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309 (11th Cir. 2001). But a party may limit or waive his entitlement to § 1988 attorney's fees as part of a settlement agreement or consent judgment. *See Evans v. Jeff D.*, 475 U.S. 717, 736–38 (1986); *Pottinger v. City of Miami*, 805

F.3d 1293, 1299 (11th Cir. 2015).  So when a plaintiff in a civil rights case accepts an offer of judgment under Rule 68, whether the plaintiff is entitled to fees-on-fees depends on the terms of the offer.  *See Marek v. Chesny*, 473 U.S. 1, 6, 9–10 (1985); Fed. R. Civ. P. 68.  If the offer of judgment provides that costs (including § 1988 attorney's fees) are included or specifies an amount for costs, then by accepting the offer the plaintiff agrees to an award of costs on those terms.  *See Marek*, 473 U.S. at 6.

We interpret Rule 68 offers of judgment according to ordinary contract principles.  *Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934, 943 (11th Cir. 2020).  This means that when the language of an offer of judgment is clear, we construe it according to the plain meaning of its terms.  *See id.*; *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004).

The offers of judgment here all contained nearly identical language regarding costs.  The defendants offered to allow entry of judgment against them for a fixed amount of damages plus "costs (including reasonable statutory attorney's fees when deemed to be a component of costs such as under 42 U.S.C. § 1988, as determined by the Court) accrued to date for all of [the plaintiff's] claims for relief."  Each offer stated that it was unconditional and "made to fully and finally resolve [the plaintiff's] claims against the [defendant] in this action, including costs and attorney's fees."  Otto and Hamilton accepted the offers in writing, acknowledging that the "offers of judgment resolve the [defendant's] liability for Plaintiffs' costs and attorney's fees," and that the amount of costs and fees

would "be established in separate proceedings following entry of final judgment in this action."

The language of the defendants' offers of judgment was not ambiguous. By accepting the offers, the plaintiffs agreed that the defendants' liability for costs, including attorney's fees, would be limited to those costs "accrued to date"—that is, to the date of the offer. The offers further specified that the judgment for damages and costs "accrued to date" would fully resolve the plaintiffs' claims, including their claims for attorney's fees.

The plaintiffs argue that the defendants should not be permitted to concede that the plaintiffs are entitled to attorney's fees, fail to specify an exact amount of those fees in their offers, and then vigorously dispute the amount of those fees while refusing to pay the costs incurred in responding to their objections. But those were the terms of the offers that the plaintiffs accepted—the offers specified a cut-off date (the date of the offer) for the accrual of attorney's fees that would be included in the judgment, and both the offers *and* the formal notices of acceptance recognized that additional litigation would be required after that date for the amount of fees to be "determined by the Court." The district court did not err in its interpretation of the offers of judgment or abuse its discretion in excluding attorney's fees incurred after the date of the offers from the costs awarded in the judgment. The plaintiffs do not contest the district court's determination that 169.5 hours were billed after the defendants' offers of judgment, so we accept that calculation.

**2.**

Next, the plaintiffs argue that the district court abused its discretion by excluding time billed by their attorneys for traveling from Liberty Counsel's office in Orlando to Palm Beach County where the lawsuit was filed, along with the associated travel expenses. They contend that it was reasonable for them to hire out-of-town attorneys and compensate them for their travel because no local firm had experience litigating SOCE cases or would be willing to represent such controversial clients.

Attorney travel time and expenses may be recoverable as costs under § 1988 if the travel is reasonably necessary to the litigation. *See Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1191–92 (11th Cir. 1983). To meet his burden of showing that it was reasonably necessary to pay out-of-town counsel to travel to the place where the case was filed, a plaintiff generally "must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

Otto and Hamilton have not met that burden here. To support their position that no competent local attorneys were available to represent them, they state that Liberty Counsel represented the plaintiffs in six of the eight cases challenging SOCE bans around the country, and plaintiffs in the other two cases were represented by national nonprofit law firms based in western states. But even if we accept that no local attorneys had experience litigating SOCE

24-10478                Opinion of the Court                9

cases, that does not mean that no attorneys with the necessary skills and experience were available and willing to successfully represent them in this case. This lawsuit was a constitutional challenge to government regulation of speech—the legal expertise required was in First Amendment free-speech law generally, not in SOCE counseling specifically. *See Otto*, 981 F.3d at 860–61 ("This is a case about what speech the First Amendment allows the government to ban, and under what circumstances."); *see also Barnes*, 168 F.3d at 437–38 (vagueness challenge to statute prohibiting certain internet transmissions required counsel with knowledge of "basic First Amendment principles," not expertise in the internet).

The plaintiffs also contend that no local attorneys would have been willing to represent them because their protected speech was controversial and unpopular. They point to the affidavit of their lead counsel stating that plaintiffs looking for representation in controversial civil rights cases often turn to "national public interest groups like Liberty Counsel, the Christian Legal Society, or the ACLU." Responding to the district court's judicial notice that the Christian Legal Society, the ACLU, and multiple national law firms have branches in Palm Beach County, they argue that the ACLU has opposed SOCE counseling and some large law firms (located outside Palm Beach County) have represented amici supporting SOCE bans.

This argument misses the point. It is the plaintiffs' burden to justify hiring out-of-town counsel by showing a lack of local attorneys willing and able to represent them. *See Barnes*, 168 F.3d at

437. As the magistrate judge pointed out, Palm Beach County has a large legal community with a range of viewpoints and experience, including multiple firms or organizations with the resources to take a civil rights case on a contingency-fee basis. The plaintiffs cannot meet their burden by theorizing that no competent attorney in that community would represent them because their speech was controversial—a feature of many, if not most, First Amendment free-speech cases. The district court did not abuse its discretion in rejecting this argument when the plaintiffs failed to show that they made any effort to find or hire qualified local counsel. The plaintiffs do not dispute the district court's calculation that their attorneys billed 86.3 hours for the nonbillable travel, so we accept that figure.

**3.**

The plaintiffs also argue that the district court abused its discretion by applying a 25% across-the-board reduction to the billable hours remaining after eliminating post-offer-of-judgment time and travel time. We agree in part. Some reduction for improper and excessive billing was appropriate, but the district court's choice of 25%—which amounted to more than 500 hours—was arbitrary and unwarranted under the circumstances.

For purposes of calculating the lodestar attorney-fee award, "hours reasonably expended" by counsel means "billable hours—that is, work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988). When making a fee

request, counsel is expected to exercise "billing judgment" by excluding from the lodestar calculation hours that are "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (quotation omitted). If counsel do not use billing judgment in preparing their fee application, "courts are obligated to do it for them." *Barnes*, 168 F.3d at 428.

When a fee application is so voluminous that an hour-by-hour review would be impractical, a district court may account for unnecessary or excessive billing by applying an across-the-board percentage reduction. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). But in doing so, the court "must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage. It is obligated to articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Johnston v. Borders*, 36 F.4th 1254, 1287 (11th Cir. 2022) (quotations omitted); *see Loranger*, 10 F.3d at 783 (district courts must "concisely but clearly articulate their reasons for selecting specific percentage reductions").

Here, the magistrate judge's recommendation to reduce billing by 25% was based on the defendants' objections to vague billing terminology; excessive time spent drafting the initial pleadings, writing a settlement demand email, and preparing for oral argument in this Court; "block billing"; and billing for clerical tasks or

12                    Opinion of the Court                    24-10478

other non-compensable activities.[1]  But except for a few non-billable activities (searching for potential plaintiffs, reviewing local rules, redundant representation at the plaintiffs' depositions, and interacting with amici) amounting to about 40 hours, the magistrate judge did not explain the value he assigned to each of these problems or how he calculated the 500-hour cut.  On review, we cannot identify any billing defect or excess that could account for such a large reduction.

The magistrate judge appeared to agree with the defendants' assertion that plaintiffs' counsel used vague terms like "drafting," "preparing," giving "attention to," or "considering strategy" without further explanation, making it impossible to determine what tasks were billed for and whether those tasks were necessary to the litigation.  To the extent that the district court accepted this representation, its unspecified reduction for "vague" billing entries was based on a clearly erroneous factual determination—nowhere in counsel's billing records were any of the listed terms used "without further explanation."  Such terms may have little meaning if used alone, but with appropriate additional explanation they perfectly describe the work lawyers are hired to perform, in language recognizable to any practicing attorney or reasonable paying client.

---

[1] The magistrate judge also determined that a fee reduction was warranted for 11.6 hours billed for "exercis[ing] billing judgment."  Those hours were already excluded from the fee calculation because they were billed after the defendants served their offers of judgment, as part of their request for "fees-on-fees."  The court abused its discretion by penalizing counsel twice for the billing-judgment entries.

Pulling examples from plaintiffs' counsel's bills, "[c]ontinued drafting of motion for preliminary injunction," "prepare initial disclosures," and "[a]ttention to preparing search terms and identifying document custodians for discussion with defense counsel in response to discovery requests" all describe the billed task in sufficient detail for the district court (or a client) to evaluate the necessity of the task and whether the time billed for the task was reasonable. No reduction for vague billing terms was warranted.

The magistrate judge also based the 25% reduction in part on plaintiffs' counsel's excessive billing for preparing the complaint and motion for preliminary injunction (105 hours), preparing and sending a five-paragraph settlement demand email (1.3 hours), and preparing for oral argument in this Court (124 hours). We agree that the hours billed for the initial pleadings and oral argument preparation were excessive—as the defendants pointed out, the initial pleadings were identical in many respects to a complaint and motion for preliminary injunction that were filed by the same attorneys in a similar lawsuit six months earlier. *See Vazzo v. City of Tampa*, No. 8:17-cv-02896 (M.D. Fla. Dec. 4, 2017). And although we appreciate and encourage counsel's thorough preparation for oral argument (including the participation of multiple attorneys in a moot court session), 15-plus eight-hour days of attorney time for oral argument preparation—not including briefing or travel—is more than a reasonable paying client would accept. The magistrate judge did not explain how much he reduced the time billed for these activities, so we do our own calculation and apply a 50% reduction to the hours billed for the initial pleadings and a 40%

reduction to the time spent in preparation for oral argument. The plaintiffs did not oppose a reduction for drafting the settlement-demand email, so we cut the time billed for that activity by 20%.

The magistrate judge also recommended cutting an unspecified number of hours for "block billing," which is the practice of "billing multiple unrelated tasks in one billing entry." *Johnston*, 36 F.4th at 1279 n.46. This practice is disfavored because it makes it "difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Id.* (quotation omitted). Block billing obstructs a court's determination of the number of hours reasonably expended on the litigation when a single billing entry includes both compensable and noncompensable tasks or when the time spent on one or more of the block-billed tasks may be excessive. Counsel seeking an award of attorney's fees under § 1988 must present records showing the time spent on discrete claims, and "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1195–96 (11th Cir. 2002) (quotation omitted). The district court must determine a reasonable fee award even when the applicant's supporting documentation is inadequate, but in such cases the court may use its judgment and any reasonable method of calculation to determine how much—if any—of the billed time to cut. *See Norman*, 836 F.2d at 1303.

The billing records at issue here contain multiple block-billed entries.[2] But most of those entries do not impede the court's task of calculating a reasonable fee award because they describe only closely related compensable activities billed in small blocks of time that are easily assessed for reasonableness. For example, an entry billing one hour and six minutes to "[p]repare for meet and confer regarding P[reliminary] I[njunction] discovery and briefing schedule; participate in meet and confer; [and engage in] follow up communication with all counsel regarding same" is block-billed, but it easily passes review for necessity and reasonableness. The same is true for a one-hour-and-twelve-minute block to "[r]eceive and review email correspondence from Hamilton re[garding] providing initial responses to discovery request; [and] review same and consider incorporation into responses." Entries like these that do not include excessive, redundant, or otherwise unnecessary activities do not support a reduction in billable hours. *See id.* at 1301.

Other block-billed entries are problematic, however, because they include nonbillable clerical activities such as electronic filing and service, organizing exhibits, scheduling, and contacting the court for updates. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks" are not billable, even at

---

[2] Some of the entries characterized by the defendants as block billing do not meet our definition of the term because they describe simultaneous or overlapping activities forming a single task. For example, we would consider reviewing a case and considering its implications for the litigation to be a single task. The same goes for reviewing a motion or brief and considering response strategy.

a paralegal rate).  As the magistrate judge noted, a reduction commensurate with the time spent on these noncompensable tasks was warranted, but striking every block-billed entry that included a clerical task was not.

Because the magistrate judge did not explain how much time he deducted for nonbillable clerical activities, we must do our own calculation.  By far the most frequently billed clerical activities were electronic filing and service, usually included in a block-billed entry for preparing the document to be filed or served.  Based on our experience and the occasional separately billed filing or service entry, a deduction of ten to fifteen minutes for each entry that included filing or service—perhaps ten hours total—is appropriate.  The records also contain billing for other clerical activities like calendaring, organizing the internal file, or contacting the court for updates, amounting to roughly 30 additional nonbillable hours.

The magistrate judge's unspecified reduction for block billing also appears to have been based in part on potentially excessive internal conferencing or strategizing among the plaintiffs' attorneys.  Some internal discussion is necessary and expected when multiple attorneys are assigned to a case, as is common in civil litigation.  A reasonable client would expect to pay for its legal team to confer at each new stage of the case and about important hearings or documents, and for more frequent conferences between lead counsel and less senior attorneys for whom the lead attorney provides guidance and assigns tasks.  Still, even after the reductions discussed above, we count more than 100 entries that include

discussion among Liberty Counsel's legal team. Because the entries are block-billed, we are not able to calculate how much time was actually spent in internal discussion. Based on the number of entries and the subjects discussed, however, we conclude that the time likely was excessive, and that a deduction of approximately 15% of the conferencing time is appropriate. Lacking any suggestion from the district court or the parties as to how the time in conference should be calculated, we attribute 30 minutes to each block-billed internal discussion and apply a reduction of roughly eight hours.

All told, the billing defects identified by the magistrate judge support a reduction of no more than 10% of the 2,019 hours remaining after the court's exclusions of time billed for travel to Palm Beach County and time billed after the defendants made their offers of judgment. We therefore vacate the district court's order applying a 25% reduction and remand with instructions to adjust the award as provided in this opinion. *See Barnes*, 168 F.3d at 431 (holding that we have discretion to decide the proper number of hours to exclude in the first instance).

**B.**

We turn next to the parties' arguments regarding the district court's determination of the hourly rates to be used in its lodestar calculation. The plaintiffs argue that the district court erred in using historical rates for work that was performed in 2018 and 2019, rather than using current hourly rates for the entire litigation, and by using the wrong market to determine the historical rates that it

awarded.  The City cross-appeals, arguing that the district court abused its discretion by refusing to reduce the hourly rates for three of the plaintiffs' attorneys who were not members of the district court's bar and did not move to be admitted pro hac vice.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.  The district court's determination of what constitutes a reasonable hourly rate is a finding of fact that we review for clear error only.  *Barnes*, 168 F.3d at 436.

### 1.

The plaintiffs argue that attorney's fees awarded under § 1988 should be calculated using current hourly rates to compensate the attorneys for waiting until the end of the case for payment. They point to our decision in *Norman v. Housing Authority of City of Montgomery*, in which we approved the then-common practice of compensating for a delay in payment by awarding current rather than historical rates.  836 F.2d at 1302.  This Court's practice changed, however, following *Perdue v. Kenny A. ex rel. Winn*, in which the Supreme Court held that enhancements to compensate for delay in payment should be reserved for "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees."  559 U.S. 542, 556 (2010).  We explained shortly after *Perdue* that "[o]ur existing circuit law on this subject must be read in light of, and modified to fit, the holdings in *Perdue* about enhancements for the delay in payment of expenses

and fees." *Gray ex rel. Alexander v. Bostic*, 613 F.3d 1035, 1044 (11th Cir. 2010). An award of current hourly rates for the entire litigation may still be appropriate if "extraordinary circumstances, such as unjustifiable conduct by the defense, caused exceptional delay in the payment of fees justifying an enhancement on that ground." *Id.* at 1045.

We cannot say that the district court abused its discretion by not awarding current hourly rates for the duration of the litigation here. We recognize that the case took almost five years from filing to judgment, with the plaintiffs' interlocutory appeal occupying three-and-a-half years of that time. That is longer than usual, but unfortunately not extraordinary for a civil case like this one with an appeal, oral argument, and petition for rehearing in this Court— or in any event, not so extraordinary that the district court made a clear error in judgment by refusing to award current rates for the delay. And although the City and County vigorously defended the case in the district court and on appeal, they did not engage in groundless disputes, fail to comply with discovery or scheduling orders, or otherwise unreasonably extend the time for decision in either court. Under the circumstances, the district court did not abuse its discretion by awarding historical rates for work performed from before the case was filed in June 2018 through the appellate argument in February 2020, and current rates from February 2020 through the defendants' offers of judgment in January and February 2023.

**2.**

The plaintiffs also take issue with the district court's decision to use Liberty Counsel's fee request filed in *Vazzo v. City of Tampa*, No. 8:17-cv-2896 (M.D. Fla. Nov. 2, 2019), to determine the appropriate hourly rates for work performed in this case before February 2020. They point out that the *Vazzo* fee request was filed in a different market—the Tampa division of the Middle District of Florida—and they argue that by awarding the rates their attorneys sought in that case, the district court based its fee determination on the wrong legal market. They rely heavily on the magistrate judge's comment in an unrelated case that in 2018, one of the "top civil litigators" in the county, described as "a senior partner from the West Palm Beach office of a national firm of over 1000 lawyers, who was admitted to the Florida Bar in 1987, charged $670 per hour for a highly contentious complex civil litigation in Palm Beach Circuit Court." *Kleiman v. Wright*, No. 18-80176-CV, 2020 WL 1980601, at *3 (S.D. Fla. Mar. 17, 2020).

As a rule, the "'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *Barnes*, 168 F.3d at 437 (quotation omitted). The fee applicant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299. Meeting this burden requires more than testimony by the applicant that a requested fee is reasonable; "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.* The skill, experience, and reputation of the attorneys and the nature and difficulty of the

case are all relevant factors in determining the market rate for the services performed. *See Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 870 (11th Cir. 1993). Under the clear error standard, we will not reverse a district court's factual finding about the applicable market rates unless "after viewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." *Silva v. Pro Transp., Inc.*, 898 F.3d 1335, 1339 (11th Cir. 2018) (quotation omitted); *see Barnes*, 168 F.3d at 436.

The district court did not clearly err in finding that the hourly rates requested by plaintiffs' counsel in the *Vazzo* litigation in November 2019 were reasonable for work performed in this case before February 2020. The *Vazzo* case involved the same plaintiffs' attorneys litigating a nearly identical First Amendment challenge to a SOCE counseling ban. We are not convinced that the magistrate judge's reference to a higher rate charged by a senior attorney with an established reputation in the county, billing unknown clients in a different, unspecified complex civil case on behalf of a large private law firm should outweigh evidence of the rates requested by the same attorneys doing the same work as in this case.

### 3.

In its cross-appeal, the City argues that the hourly rates awarded were too high for three of the Liberty Counsel attorneys who were not admitted to the district court's bar and did not move for leave to appear pro hac vice. They contend that the district court's local rules required plaintiffs' attorneys to move for admission pro hac vice in order to practice in the district, and that the

attorneys who were not admitted should be compensated at paralegal rates.

The local rules in the Southern District of Florida provide that only members of the district court's bar "may appear as attorneys before the Court, except when the Court permits an appearance pro hac vice." S.D. Fla. L.R. 4(a). Once admitted pro hac vice, an attorney who is not a member of the court's bar will nonetheless "be permitted to appear and participate in a particular case." *Id.* R. 4(b)(1).

According to the district court, its local rules did not require the plaintiffs' attorneys who did not appear in court to move for pro hac vice admission. The court therefore awarded compensation at attorney rates for research, drafting, hearing preparation, and other out-of-court attorney-level work performed by the non-admitted lawyers. This decision was well within the court's discretion, especially given the "great deference" owed to a district court's interpretation of its own local rules. *Tobinick v. Novella*, 884 F.3d 1110, 1120 (11th Cir. 2018) (quotation omitted).

## C.

The plaintiffs contend that the district court should have enhanced its lodestar award by 150% to account for the "undesirability" of the case. They acknowledge that the district court considered the undesirability of the case as a factor in determining the lodestar rate, but they maintain that a "multiplier" is warranted because civil rights litigation "stigmatizes" attorneys and often subjects them to "prolonged and vitriolic hostility." Appellants' brief

at 49–50 (quoting *Gay Lesbian Bisexual Alliance v. Sessions*, 930 F. Supp. 1492, 1497 (M.D. Ala. 1996)).

The "lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 553 (quotation omitted). In this Circuit, district courts frequently consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated in part on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90–93 (1989), in determining the lodestar award. Those factors include: (1) the court's assessment of the time and labor required by the case, (2) the novelty and difficulty of the issues raised, (3) the skill required to litigate the case properly, (4) the necessity of forgoing other employment by the attorney because of conflicts of interests or time limitations, (5) the customary fee for similar work in the community, (6) whether the fee is contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of damages involved and the results obtained, (9) counsel's experience, reputation, and ability, (10) the "undesirability" of the case and any associated economic impact on the attorney's practice, (11) the attorney's professional history with the client and the impact of the relationship on the fee arrangement, and (12) fee awards in similar cases. 488 F.2d at 717–19. Except in "rare" or "exceptional" cases, "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 559 U.S. at 552–53 (quotation omitted).

In arguing that they should receive an enhancement to the lodestar, the plaintiffs point to a district court decision from almost 30 years ago that described civil rights litigation as "very undesirable" and stated that working on such cases "stigmatizes an attorney." *Gay Lesbian Bisexual Alliance*, 930 F. Supp. at 1497. Even accepting that litigating civil rights claims on behalf of plaintiffs was once undesirable or stigmatizing, based on the number of civil rights cases filed in our Circuit in recent years, we do not think that the same is true for attorneys today. Regardless, even if civil rights cases as a class were as undesirable and stigmatizing as the plaintiffs contend, a trait common to all civil rights cases cannot support the plaintiffs' claim that this is one of the rare circumstances when an enhancement for undesirability is warranted.

As to the subject-matter of this case specifically, we have recognized that SOCE bans target "speech that many find concerning—even dangerous." *Otto*, 981 F.3d at 871. The plaintiffs point to defense counsel's arguments in this case criticizing SOCE counseling to argue that they were entitled to an enhancement. The district court did not abuse its discretion in denying an enhancement here. *See Blum*, 465 U.S. at 896. Even when opposing counsel uses hyperbolic terms or makes occasionally overblown arguments, this is not enough to establish that a district court abused its discretion in denying an enhancement to the lodestar figure, particularly in a case like this one where the court already incorporated consideration of the "undesirability" of advocating for the plaintiffs' unpopular speech.

### D.

Last, we turn to the plaintiffs' argument that the district court abused its discretion by denying their request for legal research and shipping expenses. Expenses incurred in conducting the litigation may be recovered as part of an award of costs under § 1988. *Dowdell*, 698 F.2d at 1188, 1192. As with other costs, the recoverability of expenses "is determined by the necessities of the case." *Id.* at 1191. Expenses that are reasonably necessary to the litigation should be awarded in full. *See id.* at 1190–92. But unnecessary expenses must be excluded. *See Barnes*, 168 F.3d at 438–39.

Here, the district court did not abuse its discretion by denying counsel's request for legal research and shipping expenses, because the request did not show that those expenses were reasonably necessary to the litigation. To support their claim for these expenses, counsel submitted monthly Westlaw invoices for online legal research and FedEx invoices for several shipments. Each bill bore a client reference number corresponding to this litigation. Counsel also submitted an affidavit from one of the plaintiffs' attorneys, which stated that the "claimed expenses were necessary to [counsel's] effective representation of Plaintiffs and are of a type routinely and ordinarily billed to clients."

These documents did not provide enough information for the district court to determine whether the expenses claimed were necessary to the litigation. The Westlaw invoices did not show the topics researched, and counsel provided no information linking the Westlaw transaction charges to specific litigation activities.

Similarly, the FedEx bills did not indicate what was shipped or why, and counsel did not provide information linking the shipments to any specific aspect of the litigation. We therefore affirm the district court's exclusion of these expenses.

## IV.

Plaintiffs' counsel's fee request included some billing that was "excessive, redundant or otherwise unnecessary," but the district court's reduction of 33.4% of the hours requested in plaintiffs' motion was unwarranted. *Norman*, 836 F.2d at 1301. Based on our assessment that counsel improperly billed or overbilled for various tasks (as discussed above), we conclude that a 20% reduction is appropriate. We reduce the billing for each attorney, law clerk, and paralegal proportionally, and we award the blended hourly rate calculated by the district court, resulting in the following distribution:

| Name | Hours Requested | Hours Awarded | Hourly Rate | Total |
|---|---|---|---|---|
| Richard Mast | 17.2 | 13.8 | $325 | $4,485 |
| Mary McAlister | 30.7 | 24.6 | $375 | $9,225 |
| Daniel Schmid | 464.2 | 371.4 | $462.50 | $171,772.50 |
| Horatio Mihet | 710.8 | 568.6 | $562.50 | $319,837.50 |
| Roger Gannam | 653.8 | 523.0 | $562.50 | $294,187.50 |
| Mathew Staver | 119.2 | 95.4 | $552.00 | $52,660.80 |
| Paralegal | 48.8 | 39.0 | $117.73 | $4,591.47 |
| Law Clerk | 230.1 | 184.1 | $150 | $27,615.00 |
| | **2,274.8** | **1819.9** | | **$884,374.77** |

24-10478                  Opinion of the Court                         27

We vacate the district court's order for costs and remand with instructions to increase the award of attorney's fees to $884,374.77, with expenses in the amount of $659.92 bringing the total award to $885,034.69.

**VACATED and REMANDED with instructions.**